## TELFENER *v.* RUSS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 329. Argued April 22, 25, 1892. — Decided May 16, 1892.

Under the laws of Texas, for the purchase of a portion of its unappropriated lands, an applicant could acquire no vested interest in the land applied for, that is, no legal title to it, until the purchase price was paid and the patent of the State was issued to him; but he had the right to complete the purchase and secure a patent within the prescribed period, which right is designated in the decisions of the Supreme Court of the State as a vested right that could not be defeated by subsequent legislation, and is a valuable right, which could be assigned.

The measure of damages for the breach of a contract for the sale of such a vested right by the purchaser is the difference between the contract price and the saleable value of the property.

THE court stated the case as follows:

On the 14th of July, 1879, the legislature of Texas passed an act " to provide for the sale of a portion of the unappropriated public lands of the State," and the investment of the proceeds. The following are the sections of the act which bear upon this case :

" SEC. 2. That any person, firm or corporation, desiring to purchase any of the unappropriated lands herein set apart and reserved for sale, may do so by causing the tract or tracts which such person, firm or corporation desire to purchase, to be surveyed by the authorized public surveyor of the county or district in which said land is situated.

" SEC. 3. It shall be the duty of the surveyor, to whom application is made by responsible parties, to survey the lands designated in said application within three months from the date thereof, and within sixty days after said survey, to certify to, record and map the field-notes of said survey ; and he shall also, within the said sixty days, return to and file the same in the general land office, as required by law in the other cases."

"SEC. 5. Within sixty days after the return to and filing in the general land office of the surveyor's certificate, map, and field-notes of the land desired to be purchased, it shall be the right of the person, firm or corporation who has had the same surveyed to pay or cause to be paid into the treasury of the State the purchase money therefor at the rate of fifty cents per acre, and upon the presentation to the commissioner of the general land office of the receipt of the state treasurer for such purchase money, said commissioner shall issue to said person, firm or corporation a patent for the tract or tracts of land so conveyed and paid for."

"SEC. 7. It shall be the duty of the commissioner of the general land office to give such general and specific instructions to the surveyors in relation to the survey of the public lands under the provisions of this act as may best subserve all interests of the State and carry into force and effect the intent and purposes of this act.

"SEC. 8. After the survey of any of the public domain authorized by this act, it shall not be lawful for any person to file or locate upon the land so surveyed, and such file or location shall be utterly null and void.

"SEC. 9. Should any applicant for the purchase of public land fail, refuse or neglect to pay for the same at the rate of fifty cents per acre within the time prescribed in section 5 of this act, he shall forfeit all right thereto and shall not thereafter be allowed to purchase the same, but the land so surveyed may be sold by the commissioner of the general land office to any other person, firm or corporation who shall pay into the treasury the purchase money therefor."

An amendment of the act in 1881 extended its provisions to unappropriated land in other counties than those originally mentioned. On the 22d of January, 1883, both acts were repealed. Whilst the first of these acts was in force the plaintiff below, the defendant in error here, claimed to have acquired a valuable and transferable interest in a large body of these lands, exceeding in extent a million of acres, and to have sold the lands to the defendant below, Count Joseph Telfener, at twenty-five cents an acre. To recover damages for breach

of this alleged contract, and a supplementary contract of the same date accompanying it, the present action was brought in a state court of Texas.

The petition of the plaintiff, the first pleading in the action, alleges that the plaintiff is a resident of Texas, and that the defendant is not a resident of the State, but a transient person then temporarily in the State of New York; that on the first day of November the plaintiff was the sole owner of a certain valuable, valid and transferable interest in the whole of a certain body of land containing, as subsequently ascertained by survey, 1813 tracts of 640 acres each, being an aggregate of 1,160,320 acres, situated in the county of El Paso, in the State of Texas, and forming part of what is known as the Pacific reservation; and that he had become such owner by complying with the requirements of the act of July 14, 1879, mentioned above and of the amendatory act of March 11, 1881. The petition then details the mode in which the plaintiff became such owner, namely, that during the month of October, 1882, being a responsible party, and intending to purchase the said body of land which was subject to sale under the terms of the acts mentioned, he applied to the surveyor of the county of El Paso for the purchase and survey of the eighteen hundred and thirteen tracts, describing them by metes and bounds as a whole; that he made the application pursuant to the instructions of the commissioner of the general land office of the State to the surveyors of the counties and land districts containing lands subject to sale; that the application was filed and recorded in the office of the surveyor in October, 1882; that, having thus made due application for the purchase and survey of said lands, he was, on the first day of November, 1882, about to have them surveyed into tracts of 640 acres each, when the defendant, by his duly authorized agents, applied to him to purchase his interest in the lands thus acquired; and that thereupon the plaintiff, not yet having paid to the State of Texas the fifty cents per acre, to which the State was entitled, and the defendant offering to assume such payment and desiring simply to contract with the plaintiff for the purchase and assignment of his right to

purchase from the State, they entered into the contracts contained in the exhibits annexed, marked M and N, which are as follows:

" EXHIBIT· M.

" THE STATE OF TEXAS } ss :
   *County of Dallas,* }

" This contract and agreement entered into by and between George W. Russ, of Dallas County, Texas, party of the first part, and Count J. Telfener, party of the second part, this first day of November, A.D. 1882, witnesseth as follows:

." Whereas said Russ claims to have made application in due form for the purchase of about one million acres of land, more or less, in El Paso County, Texas, from the State of Texas, under and by virtue of an act of the legislature of Texas, approved July 14, 1879, providing for a sale of a portion of the public lands of Texas at 50 cents per acre, and the amendments to said act, said application having been made in October, 1882, and duly filed in the surveyor's office of El Paso County, at Ysleta; and whereas the said Count Telfener is desirous of purchasing from said Russ all his rights, titles, and interest under and by reason of such application, provided it shall appear that such application has been regularly made and filed in such manner as will, under the terms of said law, entitle the said Russ to become the purchaser of the said lands from the State of Texas; and in such case has agreed and promised to pay to said Russ, as consideration of his sale, transfer, and assignment of all his said rights, titles, and interest, twenty-five cents per acre for each and every acre of land covered by his said application, and the said Russ has agreed and bound himself, in consideration of said price and sum to be paid to him, to sell, transfer, and assign unto the said Count Telfener all his rights, titles, and interest in said lands acquired by his application and files—

" In order, then, that the said contract of purchase and sale and assignment may be effected the said parties agree as follows:

" The said Count Telfener, for the purpose of ascertaining

whether the said application for purchase has been regularly and properly made as aforesaid and according to the provisions of said law and the amount of land covered by or embraced within such application, shall proceed at once and inspect the records and files of the surveyor's office of El Paso County, at Ysleta, and the map of said county in said office. If it shall be there shown that the said application and files thereof have been regularly and properly made in such manner as under the terms of said law would entitle the said Russ to become the purchaser of said lands .from the State of Texas, the said parties shall ascertain, by reference to said application and files and the maps of said county in said surveyor's office and in the office of the Commissioner of the General Land Office of the State of Austin, the number of acres approximately embraced in or covered by said application and files. The number of acres being ascertained by approximation in manner aforesaid, and said application having been found good and regular as aforesaid, the said Count Telfener agrees to pay to the said Russ .in cash, in the city of Dallas or the city of Austin, Texas, as said Russ shall prefer, ninety per centum of the said purchase price so agreed upon as aforesaid for the number of acres so ascertained approximately as aforesaid; and the said Russ agrees and binds himself that upon such payment being made he will execute and deliver to said Count Telfener any and all deed or deeds or other instruments that may be proper or necessary conveying, transferring, and assigning unto the said Count Telfener all and singular the rights, titles, and interests that the said Russ now has or may be entitled to in and to said lands by reason of such application and files, binding himself by covenant of warranty against all persons claiming or to claim the same or any part thereof by, through, or under him. It is understood, however, that the said inspection, ascertainment of regularity of files, and of the amount of land by approximation shall be completed on or before the 15th day of November, 1882, and that the said Count Telfener shall not be entitled to any delay beyond that time for said purposes and for making the payment aforesaid.

"After the transfer and assignment as aforesaid shall have

been made by the said Russ the said Count Telfener shall proceed, without delay, and have said lands surveyed and platted, and the field-notes thereof returned and filed according to the provisions of said law.

" Upon the completion of said surveys and field-notes the number of acres embraced in said lands so sold and transferred shall be ascertained, and if the said sum so paid as aforesaid by said Count Telfener shall not amount to the full purchase price of twenty-five cents per acre for each and every acre of said land the deficit shall be paid at once in cash to said Russ by the said Count Telfener in the city of Dallas, Texas, or at Austin, Texas, as the said Russ may prefer.

" Witness our hands this 1st day of November, 1882.

" GEO. W. RUSS.

" J. TELFENER,

" By C. BACCARISSE, *Agt.*

" Witness : CHAS. FRED. TUCKER.

" WM. McGRAIN."

" EXHIBIT N.

" This contract and agreement entered into this 1st day of November, 1882, by and between Count J. Telfener and G. W. Russ, witnesseth as follows :

" Whereas the said parties have this day entered into a contract providing for the sale and transfer by the said Russ to the said Count Telfener of all the right, title, and interest of the said Russ in a certain tract of about one million acres of land in El Paso County, Texas, for the purchase of which the said Russ has made application under and by virtue of the act of the legislature of Texas approved July 14, 1879, known as the 50-cent act; and whereas if said sale and transfer shall be made as provided for by said contract it will be necessary to complete the surveys of said land and file the field-notes and maps thereof in the surveyor's office of El Paso County, Texas, and in the General Land Office at Austin within the time required by the said law : Now, therefore, it is agreed by the said Russ that if the sale and transfer

shall be made under the said contract as aforesaid he will at his own proper cost and expense make all the surveys, field-notes, and maps of the said lands and file them in the office of the surveyor of El Paso County and in the General Land Office of the State, at Austin, in the manner and within the time required by the provisions of the said law, and that he will pay all the fees required to be paid for such patents as shall be issued by the Commissioner of the General Land Office for said lands to said Count Telfener, his heirs or assigns, the said surveys, field-notes, and maps to be correct, and in consideration of said services and payments to be rendered and paid by said Russ the said Count Telfener agrees and binds himself to pay to said Russ in cash, at the city of Dallas or Austin, Texas, the sum of five (5) cents per acre for each and every acre so surveyed, platted, and returned by him as aforesaid, said payment to be made as follows, viz.: Three (3) cents per acre when the survey and field-notes shall be completed and one (1) cent per acre when the field-notes shall be filed in the land office, and the balance when the patents shall issue.

"Witness our hands this 1st day of November, 1882.

"Geo. W. Russ.

"J. Telfener,

"By C. Baccarisse, *Agt.*"

The petition alleges that by the contracts set forth the plaintiff sold, and agreed to assign to the defendant, and the defendant purchased and agreed to accept from the plaintiff, at the price of twenty-five cents an acre, a conveyance of plaintiff's application to purchase of the State 1813 tracts of land, being part of the Pacific reservation, and that at the time the plaintiff was able and authorized to make the contracts and to execute and deliver a proper and valid assignment and transfer of his said application and of all his rights, titles and interests thereunder to the defendant.

The petition also contains various allegations as to arrangements made by the parties for ascertaining whether or not the application of the plaintiff for the purchase of the lands had

been regularly and properly made, and according to the provisions of the laws of Texas, and among others that such conformity being shown as would entitle the plaintiff to become the purchaser, the defendant agreed to pay him ninety per cent of the purchase price stipulated. It also alleges the readiness of the plaintiff to fully comply with the contract and the failure of the defendant in all things to comply with the same on his part, to the damage of the plaintiff of four hundred thousand dollars.

The plaintiff therefore prayed judgment for the sum of twenty-five cents per acre alleged to be due to him for said one million one hundred sixty thousand three hundred and twenty acres, and also for the sum of fifty-eight thousand and sixteen dollars alleged to be due him on the supplementary contract contained in Exhibit N, together with legal interest on both sums, and for such further judgment and decree as on the hearing might seem equitable and just.

The defendant appeared to the action, and for answer said: First, that the petition was insufficient in law, wherefore he prayed judgment; second, that he denied all and singular the allegations of the petition; and, third, that he denied that he executed, by himself or agent, the instruments, or either of them, annexed to the petition.

The case was subsequently, on application of the defendant, removed from the state court to the Circuit Court of the United States for the Western District of Texas, and there the defendant had leave to file an amended answer, which averred, 1st, that the petition was insufficient in law to require him to answer it, upon which the judgment of the court was prayed; 2d, that the so-called Pacific reservation was not subject to sale by the State of Texas; and, 3d, that if Baccarisse, mentioned in the petition as the agent of the defendant, ever had any authority to negotiate in regard to the purchase of lands in Texas, it was merely as an employé under one Wescott, and his employment was merely to inquire and ascertain whether options or conditional contracts could be obtained by which parties would agree to sell lands in that State subject to the inspection and approval of an expert or

inspector sent out by a London syndicate for that purpose, such contract not to be final and binding unless ratified by the defendant after the approval of the expert; that the defendant never knew, until shortly before the present suit was instituted, that Baccarisse had attempted to execute any contract, as set up in the petition; and that he never authorized him to make any contracts, nor ever approved or ratified any made by him. This answer was again amended, by leave of the court, by the addition of a further defence, in which the defendant averred that if any such contract or contracts as are referred to and exhibited with the petition, were entered into by his authority or ratified by him, which is denied, the same were without any consideration, or, if there was any valid consideration therefor, the same failed in this, that the law which permitted the purchase of the lands was repealed before the steps required thereby to obtain title, or any vested interest therein, could have been or were taken, and by reason thereof all right, if any, which defendant acquired or could have acquired under the contracts were lost to him.

The case was tried by the court with a jury. Among other things, it was contended by the defendant that the plaintiff had no assignable interest in the lands described, but the court, of its own motion, charged the jury that if this were a rule when nothing but an application had been filed, the Supreme Court of the State had decided that, after surveys, a right did attach which could not be divested by adverse legislation, and that, in that case, all the surveys, excepting four mentioned, were made before the first day of November, 1882, the date of the contract of sale. To this ruling an exception was taken. It was also contended that the plaintiff, even if the contracts had been originally valid, had suffered no pecuniary damages from their breach; and the court was requested to charge the jury that the measure of damages would be the difference between twenty-five cents per acre, for as many acres as were embraced in the plaintiff's application to the county surveyor to purchase, and the diminished market value below that figure on the 15th of November, 1882; that no special damages could be recovered unless they were alleged and proved, and as such

damages had neither been alleged nor proved the jury should find for the defendant; but the court refused thus to charge, and instructed the jury that if the contracts were made as stated, and the plaintiff had complied with the laws of Texas respecting the application for the lands, he was entitled to recover twenty-five cents an acre for all the lands of which a survey was made. To this ruling an exception was taken. The jury found for the plaintiff in the sum of $384,809.38. A remittitur of $400.38 having been made therefrom, judgment was entered for the balance, namely, $384,409, the same to draw interest at the rate of eight per cent per annum. To review this judgment the case is brought here on writ of error.

*Mr. Robert G. Ingersoll* for plaintiff in error. *Mr. J. L. Peeler* was with him on the brief.

*Mr. Jefferson Chandler* and *Mr. John J. Weed* for defendant in error.

MR. JUSTICE FIELD, after stating the case, delivered the opinion of the court.

Two questions were presented for our consideration on the argument of this case — 1st, whether the plaintiff below, the defendant in error here, acquired any assignable interest in the real property described in the contract upon which the action is brought; 2d, assuming that he had an assignable interest, whether the rule for the measure of damages for breach of the contract for such interest by the defendant was correctly stated to the jury by the court.

1. The State of Texas opened its unappropriated lands for sale on the most liberal terms. Any person, firm or corporation desiring to purchase any portion of the lands might do so by applying to have the same surveyed by the authorized public surveyor of the county or district in which it was situated. It was made the duty of the surveyor to whom such application was made by a responsible party, to survey the land designated, within three months thereafter, and within sixty days after the survey to certify and record a map and field-notes of

the survey, and return and file them in the General Land Office of the State. Within sixty days after the return and filing of these papers in the General Land Office it was the right of the person, firm or corporation that had had the survey made to pay or cause to be paid into the treasury of the State the purchase money at the rate of fifty cents per acre. Upon presentation to the Commissioner of the General Land Office of the receipt of the state treasurer of the purchase money, the Commissioner was to issue to the person, firm or corporation a patent for the tract or tracts surveyed and paid for. And the statute declared that if any applicant for the purchase of public land refused or neglected to pay for the same at the rate of fifty cents per acre, within the time prescribed in the 5th section, he should forfeit all rights thereto and should not thereafter be allowed to purchase the same, but the land surveyed might be sold by the Commissioner of the General Land Office to any other person, firm or corporation that should pay into the treasury the purchase money therefor.

It will thus be seen that an applicant, under the laws of Texas, for the purchase of a portion of its unappropriated lands, could acquire no vested interest in the land applied for, that is, no legal title to it, until the purchase price was paid and the patent of the State was issued to him. If the price was not paid within sixty days after the return to the General Land Office of a map of the land desired and the field-notes of its survey, he forfeited all right to the land, and was not thereafter allowed to purchase it. He had, however, the right to complete the purchase and secure a patent within the prescribed period, after the map and field-notes of the survey were filed in the General Land Office, which is designated, in the decisions of the Supreme Court of the State as a vested right that could not be defeated by subsequent legislation. Whether this vested right for the limited period prescribed was assignable to others without the consent of the state authorities, neither the statutes of the State nor the decisions of its courts inform us definitely. It would seem that if a right to purchase land for however short a period is vested in

one, it is a valuable right, and is, in that sense, property, and in the absence of express prohibition would be therefore assignable. Such is apparently the import of language used by the Supreme Court of the State in some of its decisions. *White* v. *Martin*, 66 Texas, 340 ; *Jumbo Cattle Co.* v. *Bacon*, 79 Texas, 5.

In this case the purchase price of the land applied for by the plaintiff was never paid or tendered to the State by him, and on January 22, 1883, both of the laws of Texas — that of July 14, 1879, and that of March 11, 1881, were repealed. But it is contended that previous to such repeal he had acquired a right to complete the purchase of the land by paying its price and thus obtaining a patent for it, and while possessing that right the alleged contract was made with the defendant for its sale to him.

2. We will not, however, rest our decision upon the assignability of the right to purchase alleged to have been thus made, without the assent of the state authorities, as there is another and clear ground for the disposition of the case, in the instruction of the court to the jury upon the measure of damages for the alleged breach of the contract, which was that, if the contract was made as stated, and the plaintiff had complied with the laws of Texas respecting the application for the land, he was entitled to recover of the defendant twenty-five cents an acre — the full contract price — for all the land of which a survey was made. In this instruction the Circuit Court erred.

Assuming that the plaintiff had acquired a vested right to complete the proceedings for the purchase of the land desired, and to secure a patent for it, and that such right was not personal to him but was transferable to another without the assent of the state authorities, he did not show that he had suffered any damages by the failure of the defendant to comply with the contract for the right to purchase the land. On the 15th of November he possessed all the right to the land which he ever possessed, and, assuming that the defendant then failed to make the payment which he had agreed to make, all the damages suffered by the plaintiff was the dif-

ference between the value of the right, as stipulated to be paid, and the amount which could then have been obtained on its sale. The measure of damages for breach of a contract of sale of land by the purchaser is the difference between the contract price and the salable value of the property. That is the rule laid down by the Supreme Court of Texas in *Kempner* v. *Heidenheimer*, 65 Texas, 587. That court also adds that the salable value "may be fixed by a fair resale, after notice to the party to be bound by the price as the value, within a reasonable time after the breach." In that case it was also held that, where no sale was made, the plaintiff was only entitled to recover the difference between the market value at the date of the defendant's breach and the price he had agreed to pay, and that the duty devolved upon the plaintiff to establish these factors in the measure of damages. The same rule as to the measure of damages upon a breach of a contract for the sale of lands was held to be the proper one by the Supreme Court of Massachusetts in *Old Colony. Railroad* v. *Evans*, 6 Gray, 25, 36, after considering numerous authorities on the subject. A similar rule prevails in Pennsylvania. *Bowser* v. *Cessna*, 62 Penn. St. 148, 151. The same rule must apply where the contract is not for the land but for a right to purchase the land. The measure of damages must be the difference between the contract price and the salable value of the right when payment was to be made.

In the present case no evidence was produced to show the value on the 15th of November of the right of the plaintiff which he had sold to the defendant, nor was there any evidence produced as to the amount for which he could have sold to others that right; there was no evidence, therefore, for the estimate of damages at that time upon which the jury could have based a verdict. If anything could then have been obtained from the sale of that right, and the contract had been valid and binding, it was the duty of the plaintiff to make the sale when the defendant defaulted in his contract, and thus to have subjected him to as little loss as practicable. But no such sale was attempted, and no evi-

dence was offered as to the value of the supposed right sold, and consequently no foundation laid for any recovery.

*It follows that the judgment must be reversed, and the cause remanded, with directions to the court below to grant a new trial, and to take further proceedings in accordance with this opinion.*