## TELFENER v. RUSS.

(Circuit Court of Appeals, Fifth Circuit. February 6, 1894.)

No. 183.

1. TEXAS LANDS— RIGHT ACQUIRED BY APPLICATION TO PURCHASE — ASSIGNABILITY.

The right to purchase lands from the state of Texas, which is acquired by making application therefor to the county surveyor, and the acceptance and filing thereof by him, in accordance with the requirements of the statute, (Act Tex. July 14, 1879,) is a valuable right, which may be lawfully assigned. 57 Fed. 973, affirmed.

2. BREACH OF CONTRACT—DAMAGES.

Plaintiff, having made applications, which were accepted and filed by the county surveyor, to purchase certain lands from the state of Texas, (under the act of July 14, 1879,) contracted to sell all his rights therein to defendant, who was to have until November 15, 1882, and no longer, to make the payments. On the same day the parties made another con-

tract, whereby plaintiff, for a new consideration, became bound, in case the sale and transfer were completed as agreed, to make, at his own expense, all surveys, maps, etc., and file them with the county surveyor, and in the general land office of the state, within the 60 days required by the act. Defendant, however, failed to complete the purchase on the date named, or at any subsequent time. *Held*, that the right of plaintiff to damages for the breach of contract became fixed on that date, and it was immaterial whether he made the surveys, etc., according to the second contract, or ever made them at all.

In Error to the Circuit Court of the United States for the Western District of Texas.

This was an action by George W. Russ against Count Joseph Telfener to recover damages for breach of a contract to purchase certain rights acquired by plaintiff in lands belonging to the state of Texas. There was a verdict and judgment for plaintiff, which, on a writ of error, was reversed by the supreme court of the United States, and the case remanded for a new trial. See 12 Sup. Ct. 930. Verdict and judgment have again been rendered in favor of plaintiff, (see 57 Fed. 973, for the court's charge to the jury,) and defendant now brings the case on error to this court.

The following statement of the facts was made by Mr. Justice Field when the case was before the supreme court:

On the 14th of July, 1879, the legislature of Texas passed an act "to provide for the sale of a portion of the unappropriated public lands of the state," and the investment of the proceeds. The following are the sections of the act which bear upon this case: "Sec. 2. That any person, firm, or corporation, desiring to purchase any of the unappropriated lands herein set apart and reserved for sale, may do so by causing the tract or tracts which such person, firm, or corporation desires to purchase to be surveyed by the authorized public surveyor of the county or district in which said land is situated. Sec. 3. It shall be the duty of the surveyor, to whom application is made by responsible parties, to survey the lands designated in said application within three months from the date thereof, and, within sixty days after said survey, to certify and record a map and field notes of said survey; and he shall also, within the said sixty days, return to and file the same in the general land office, as required by law in the other cases. * * * Sec. 5. Within sixty days after the return to and filing in the general land office of the surveyor's certificate, map, and field notes of the land desired to be purchased, it shall be the right of the person, firm, or corporation who has had the same surveyed to pay, or cause to be paid, into the treasury of the state, the purchase money therefor at the rate of fifty cents per acre, and, upon the presentation to the commissioner of the general land office of the receipt of the state treasurer for such purchase money, said commissioner shall issue to said person, firm, or corporation a patent for the tract or tracts of land so conveyed and paid for." "Sec. 7. It shall be the duty of the commissioner of the general land office to give such general and specific instructions to the surveyors in relation to the survey of the public lands under the provisions of this act as may best subserve all interests of this state, and carry into force and effect the intent and purposes of this act. Sec. 8. After the survey of any of the public domain authorized by this act, it shall not be lawful for any person to file or locate upon the land so surveyed, and such file or location shall be utterly null and void. Sec. 9. Should any applicant for the purchase of public land fail, refuse, or neglect to pay for the same at the rate of fifty cents per acre within the time prescribed in section 5 of this act, he shall forfeit all rights thereto, and shall not thereafter be allowed to purchase the same, but the land so surveyed may be sold by the commissioner of the general land office to any other person, firm, or corporation who shall pay into the treasury the purchase money therefor." An amendment of the act in 1881 extended its provisions to unappropriated land in other counties than those originally mentioned. On the 22d of January, 1883, both acts were re-

pealed. While the first of these acts was in force the plaintiff below, the defendant in error here, claimed to have acquired a valuable and transferable interest in a large body of these lands, exceeding in extent a million of acres, and to have sold the lands to the defendant below, Count Joseph Telfener, at 25 cents an acre. To recover damages for breach of this alleged contract, and a supplementary contract of the same date accompanying it, the present action was brought in a state court of Texas. The petition of the plaintiff, the first pleading in the action, alleges that the plaintiff is a resident of Texas, and that the defendant is not a resident of the state, but a transient person then temporarily in the state of New York; that on the 1st day of November the plaintiff was the sole owner of a certain valuable, valid, and transferable interest in the whole of a certain body of land containing, as subsequently ascertained by survey, 1,813 tracts of 640 acres each, being an aggregate of 1,160,320 acres, situated in the county of El Paso, in the state of Texas, and forming part of what is known as the "Pacific Reservation;" and that he had become such owner by complying with the requirements of the act of July 14, 1879, mentioned above, and of the amendatory act of March 11, 1881. The petition then details the mode in which the plaintiff became such owner, namely, that during the month of October, 1882, being a responsible party, and intending to purchase the said body of land which was subject to sale under the terms of the acts mentioned, he applied to the surveyor of the county of El Paso for the purchase and survey of the 1,813 tracts, describing them by metes and bounds as a whole; that he made the application pursuant to the instructions of the commissioner of the general land office of the state to the surveyors of the counties and land districts containing lands subject to sale; that the application was filed and recorded in the office of the surveyor in October, 1882; that, having thus made due application for the purchase and survey of said lands, he was, on the 1st day of November, 1882, about to have them surveyed into tracts of 640 acres each, when the defendant, by his duly-authorized agents, applied to him to purchase his interest in the lands thus acquired; and that thereupon the plaintiff, not yet having paid to the state of Texas the 50 cents per acre to which the state was entitled, and the defendant offering to assume such payment, and desiring simply to contract with the plaintiff for the purchase and assignment of his right to purchase from the state, they entered into the contracts contained in the exhibits annexed, marked "M" and "N," which are as follows:

### "Exhibit M.

"The State of Texas, County of Dallas—ss.: This contract and agreement entered into by and between George W. Russ, of Dallas county, Texas, party of the first part, and Count J. Telfener, party of the second part, this first day of November, A. D. 1882, witnesseth as follows: Whereas, said Russ claims to have made application in due form for the purchase of about one million acres of land, more or less, in El Paso county, Texas, from the state of Texas, under and by virtue of an act of the legislature of Texas, approved July 14, 1879, providing for a sale of a portion of the public lands of Texas at 50 cents per acre, and the amendments to said act, said application having been made in October, 1882, and duly filed in the surveyor's office of El Paso county, at Ysleta; and whereas, the said Count Telfener is desirous of purchasing from said Russ all his rights, titles, and interest under and by reason of such application, provided it shall appear that such application has been regularly made and filed in such manner as will, under the terms of said law, entitle the said Russ to become the purchaser of the said lands from the state of Texas; and in such case has agreed and promised to pay to said Russ, as consideration of his sale, transfer, and assignment of all his said rights, titles, and interest, twenty-five cents per acre for each and every acre of land covered by his said application, and the said Russ has agreed and bound himself, in consideration of said price and sum to be paid to him, to sell, transfer, and assign unto the said Count Telfener all his rights, titles, and interest in said lands acquired by his application and files: In order, then, that the said contract of purchase and sale and assignment may be effected, the said parties agree as follows: The said Count Telfener, for the purpose of ascertaining whether the said application for purchase has been regularly

and properly made as aforesaid, and according to the provisions of said law and the amount of land covered by or embraced within such application, shall proceed at once and inspect the records and files of the surveyor's office of El Paso county, at Ysleta, and the map of said county in said office. If it shall be there shown that the said application and files thereof have been regularly and properly made, in such manner as under the terms of said law would entitle the said Russ to become the purchaser of said lands from the state of Texas, the said parties shall ascertain by reference to said application and files and the maps of said county in said surveyor's office, and in the office of the commissioner of the general land office of the state at Austin, the number of acres approximately embraced in or covered by said application and files. The number of acres being ascertained by approximation in manner aforesaid, and said application having been found good and regular as aforesaid, the said Count Telfener agrees to pay to the said Russ in cash, in the city of Dallas or the city of Austin, Texas, as said Russ shall prefer, ninety per centum of the said purchase price so agreed upon as aforesaid for the number of acres so ascertained approximately as aforesaid; and the said Russ agrees and binds himself that upon such payment being made he will execute and deliver to said Count Telfener any and all deed or deeds or other instruments that may be proper or necessary, conveying, transferring, and assigning unto the said Count Telfener all and singular the rights, titles, and interests that the said Russ now has or may be entitled to in and to said lands, by reason of such application and files, binding himself by covenant of warranty against all persons claiming or to claim the same, or any part thereof, by, through, or under him. It is understood, however, that the said inspection, ascertainment of regularity of files, and of the amount of land by approximation shall be completed on or before the 15th day of November, 1882, and that the said Count Telfener shall not be entitled to any delay beyond that time for said purposes and for making the payment aforesaid. After the transfer and assignment as aforesaid shall have been made by the said Russ, the said Count Telfener shall proceed, without delay, and have said lands surveyed and platted, and the field notes thereof returned and filed according to the provisions of said law. Upon the completion of said surveys and field notes, the number of acres embraced in said lands so sold and transferred shall be ascertained, and, if the said sum so paid as aforesaid by said Count Telfener shall not amount to the full purchase price of twenty-five cents per acre for each and every acre of said land, the deficit shall be paid at once in cash to said Russ by the said Count Telfener in the city of Dallas, Texas, or at Austin, Texas, as the said Russ may prefer.

"Witness our hands this 1st day of November, 1882.

"Geo. W. Russ.<br>"J. Telfener, by C. Baccarisse, Agt.

"Witness:

"Chas. Fred. Tucker.

"Wm. McGrain."

"Exhibit N.

"This contract and agreement entered into this 1st day of November, 1882, by and between Count J. Telfener and G. W. Russ, witnesseth as follows: Whereas, the said parties have this day entered into a contract providing for the sale and transfer by the said Russ to the said Count Telfener of all the right, title, and interest of the said Russ in a certain tract of about one million acres of land in El Paso county, Texas, for the purchase of which the said Russ has made application under and by virtue of the act of the legislature of Texas approved July 14, 1879, known as the '50-Cent Act;' and whereas, if said sale and transfer shall be made as provided for by said contract, it will be necessary to complete the surveys of said land, and file the field notes and maps thereof in the surveyor's office of El Paso county, Texas, and in the general land office at Austin, within the time required by the said law: Now, therefore, it is agreed by the said Russ that if the sale and transfer shall be made under the said contract as aforesaid, he will, at his own proper cost and expense, make all the surveys, field notes, and maps of the said lands, and file them in the office of the surveyor of El Paso county, and

in the general land office of the state, at Austin, in the manner and within the time required by the provisions of the said law, and that he will pay all the fees required to be paid for such patents as shall be issued by the commissioner of the general land office for said lands to said Count Telfener, his heirs or assigns, the said surveys, field notes, and maps to be correct; and in consideration of said services and payments to be rendered and paid by said Russ the said Count Telfener agrees and binds himself to pay to said Russ in cash, at the city of Dallas or Austin, Texas, the sum of five (5) cents per acre for each and every acre so surveyed, platted, and returned by him as aforesaid, said payment to be made as follows, viz.: Three (3) cents per acre when the survey and field notes shall be completed, and one (1) cent per acre when the field notes shall be filed in the land office, and the balance when the patents shall issue.

"Witness our hands this 1st day of November, 1882.

"Geo. W. Russ.

"J. Telfener, by C. Baccarisse, Agt."

The petition alleges that by the contracts set forth the plaintiff sold and agreed to assign to the defendant, and the defendant purchased and agreed to accept from the plaintiff, at the price of 25 cents an acre; a conveyance of plaintiff's application to purchase of the state 1,813 tracts of land, being part of the Pacific reservation, and that at the time the plaintiff was able and authorized to make the contracts, and to execute and deliver a proper and valid assignment and transfer of his said application, and of all his rights, titles, and interests thereunder, to the defendant. The petition also contains various allegations as to arrangements made by the parties for ascertaining whether or not the application of the plaintiff for the purchase of the lands had been regularly and properly made, and according to the provisions of the laws of Texas, and, among others, that such conformity being shown as would entitle the plaintiff to become the purchaser, the defendant agreed to pay him 90 per cent. of the purchase price stipulated. It also alleges the readiness of the plaintiff to fully comply with the contract, and the failure of the defendant in all things to comply with the same on his part, to the damage of the plaintiff of $400,000. The plaintiff, therefore, prayed judgment for the sum of 25 cents per acre alleged to be due to him for said 1,160,320 acres, and also for the sum of $58,016, alleged to be due him on the supplementary contract contained in Exhibit N, together with legal interest on both sums, and for such further judgment and decree as on the hearing might seem equitable and just. The defendant appeared to the action, and for answer said—First, that the petition was insufficient in law, wherefore he prayed judgment; second, that he denied all and singular the allegations of the petition; and, third, that he denied that he executed, by himself or agent, the instruments, or either of them, annexed to the petition. The case was subsequently, on application of the defendant, removed from the state court to the circuit court of the United States for the western district of Texas, and there the defendant had leave to file an amended answer, which averred (1) that the petition was insufficient in law to require him to answer it, upon which the judgment of the court was prayed; (2) that the so-called Pacific reservation was not subject to sale by the state of Texas; and (3) that if Baccarisse, mentioned in the petition as the agent of the defendant, ever had any authority to negotiate in regard to the purchase of lands in Texas, it was merely as an employe under one Westcott, and his employment was merely to inquire and ascertain whether options or conditional contracts could be obtained by which parties would agree to sell lands in that state subject to the inspection and approval of an expert or inspector sent out by a London syndicate for that purpose, such contract not to be final and binding unless ratified by the defendant after the approval of the expert; that the defendant never knew, until shortly before the present suit was instituted, that Baccarisse had attempted to execute any contract, as set up in the petition; and that he never authorized him to make any contracts, nor ever approved or ratified any made by him. This answer was again amended, by leave of the court, by the addition of a further defense, in which the defendant averred that if any such contract or

contracts as are referred to and exhibited with the petition were entered into by his authority or ratified by him, which is denied, the same were without any consideration, or, if there was any valid consideration therefor, the same failed in this: that the law which permitted the purchase of the lands was repealed before the steps required thereby to obtain title, or any vested interest therein, could have been or were taken, and by reason thereof all right, if any, which defendant acquired or could have acquired under the contracts were lost to him.

J. L. Peeler, for plaintiff in error.

Charles Fred. Tucker, Clarence H. Miller, and Franz Fizet, (Hancock & Shelley, of counsel,) for defendant in error.

Before PARDEE, Circuit Judge, and TOULMIN, District Judge.

PARDEE, Circuit Judge. This case has been once before the supreme court of the United States, and is reported in 145 U. S. 522, 12 Sup. Ct. 930. That report contains a full statement of the general merits and pleadings in the case. In the supreme court, two questions were presented—First, whether the plaintiff below acquired any assignable interest in the real property described in the contract upon which the action was brought; and, second, assuming that he had an assignable interest, whether the rule for the measure of damages for breach of the contract for such interest by the defendant was correctly stated to the jury by the court. The first question was discussed, but not decided. The court, however, intimated "that if a right to purchase land, for however short a period, is vested in one, it is a valuable right, and is in that sense property, and, in the absence of express prohibition, would be therefore assignable." The case was reversed and remanded because of error in the charge of the trial court as to the measure of damages. On the second trial, there was another verdict for the plaintiff in the court below, and the case is brought here for review on several assignments of error, which will be considered in order.

The first assignment of error relates to permitting the plaintiff to offer in evidence and read to the jury, over defendant's objection, certain telegrams from one C. K. Westcott to one C. Baccarisse in regard to executing the contract between plaintiff and defendant, sued on; and the second assignment of error complains of the charge to the jury, as follows:

"If, from consideration of the evidence, you conclude that Baccarisse had authority, direct from the defendant, to execute the contract in his behalf, then it would be binding upon the defendant. It would also be binding upon the defendant if Westcott, with authority from, and knowledge and consent of, defendant, empowered Baccarisse to execute it. If you find from the evidence that Baccarisse had authority from the defendant, or from Westcott, with the defendant's assent, approval, and knowledge, to contract with individuals generally for the purpose of procuring lands under the act of the legislature of 1879, by filing upon them and having the same surveyed, then you are instructed that the acts of Baccarisse were binding upon the defendant, as such acts came within the scope of his authority, and defendant cannot avoid liability thus created."

The contract sued on purported to have been executed on the part of the plaintiff in error by one C. Baccarisse, agent. The amended answer denies the authority of C. Baccarisse as agent, but impliedly admits the agency of C. K. Westcott; so that the question of agency

was substantially raised by the pleadings, and the evidence tending to support or disprove the agency of either Baccarisse or Westcott could work no surprise. The bill of exceptions taken to the admission of the evidence complained of, and to the charge of the trial court in relation to such evidence, contains no statement of the facts otherwise proved, or attempted to be proved, in relation to agency, so as to enable this court to determine whether the evidence objected to was or was not admissible, or whether the charge of the court was relevant. The objection assigned to the admission of the evidence and to the charge of the court is that the plaintiff did not allege in his pleadings that Westcott was the defendant's agent, or that the said Westcott was authorized to empower the said Baccarisse to make the contract sued on. As we have seen, the question of agency was raised by the pleadings, so far as to fully inform each party that the lawful agency of both Baccarisse and Westcott would be an issue in the case. The charge of the court implies that evidence had been offered tending to show that Westcott had authority as agent of the plaintiff in error to empower Baccarisse, and that there was also evidence tending to show that Baccarisse had authority direct from the plaintiff in error himself. In either case, the evidence objected to was admissible, and the charge complained of was proper. As the case is presented to us under the bill of exceptions, however, we are unable to determine the admissibility of the one, or the propriety of the other.

The third assignment of error is the refusal of the trial court to charge the jury as follows:

"The court instructs the jury that the 'right, title, and interest' of plaintiff, in his application and files on lands, and which he contracted to sell, was not a vested right on the 1st day of November, 1882, in or to any lands surveyed after that date. The acceptance by the surveyor of the plaintiff's application for land invested plaintiff with no right that he could sell, and for such sections of land surveyed after said November 1, 1882, you will not consider, or include in the measure of damages."

The evidence relating to this matter shows that the plaintiff had made application, in two instruments of writing, for the survey of 1,813 sections of land described in his petition, which was addressed to, and the applications filed by, the county surveyor of El Paso county, on October 4 and 5, 1882, respectively. It shows, also, that the surveys of said land, for which said Russ had made application, were made at and prior to the time of the execution of the contract sued on, saving and excepting 98 sections, of 640 acres each, surveys of which were made between November 1 and November 9, 1882. These surveys were filed in the general land office on the 8th day of January, 1883. The instrument executed between the plaintiff and the defendant November 1, 1882, was an executory contract, by which the plaintiff, for and in consideration of a sum of money promised to be paid by the defendant, agreed on the 15th day of November, 1882, to transfer and assign to defendant all his right, title, and interest in and to the land in question, acquired by virtue of plaintiff's application. This contract was a valid and binding contract, at the time it was entered into, unless it was prohibited by law or public policy, which is not con-

tended. Under this state of the law and of the evidence, the instruction asked for did not present the law of the case, and, if technically correct, as a general proposition, was calculated to mislead, and was therefore properly refused. The actual charge of the court, given in this regard, is as follows:

"You are further instructed that the right to purchase the lands mentioned, which right the plaintiff acquired by virtue of his applications, as set forth in the contract and shown by the evidence, was a valuable right, and one which could be lawfully assigned."

And it seems to have correctly presented the law of the case.

The fourth assignment of error complains of the refusal of the trial court to charge the jury as follows:

"You are instructed that the law required the field notes of the land to be returned to and filed in the general land office within sixty days after the same was surveyed. The evidence shows that the field notes of only twenty-four sections of land were returned to and filed in the general land office within said sixty days. Therefore, the court charges you that you can only consider plaintiff's right in twenty-four sections of land."

This assignment, relating to the filing in the general land office of the surveys made under the application of the plaintiff in the court below, may be disposed of with the fifth assignment of error, which relates to a question as to whether the surveys made under the plaintiff's application, and returned to and filed in the general land office, were actual surveys on the ground, or were "chimney-corner" or office surveys. In the view that we take of the case, it is wholly immaterial whether the surveys made under the application of the plaintiff, and returned to the general land office, were made and returned within 60 days after the date of the survey, or were returned at all, and also whether the surveys made under the said application were actually made on the ground, or were office surveys.

With regard to the return of the surveys to the general land office, with the field notes, within 60 days after the date of the survey, a reference to the law will show that the duty of making such return devolved, not upon the applicant, but upon the surveyor, and that the failure to make such return within the time, on the part of the surveyor, is not a reason for forfeiture, under the terms of the act. The ninth section of the act is the only section of the same which provides for the forfeiture of the rights secured by the application, and that provision is that should any applicant for the purchase of public land fail, refuse, or neglect to pay for the same, at the rate of 50 cents per acre, within the time prescribed in section 5 of the act, he shall forfeit all rights thereto, and he shall not be allowed, thereafter, to purchase the same. But, be this as it may, the contract sued on is an agreement to transfer from Russ to Telfener, all and singular, the rights, title, and interest that the said Russ now has or may be entitled to in and to said lands, by reason of the application theretofore made by him to purchase the same. There was no agreement whatever that any actual surveys had been made under such application, or that, if such actual surveys had been made, he (Russ) would cause them to be returned

and filed in the general land office at any time, or in any manner whatever. The contract made the same day between the same parties provided that Russ, at his own proper cost and expense, should make all the surveys, field notes, and maps of the said lands, and file them in the office of the surveyor of El Paso county, and in the general land office of the city of Austin, Tex., in the manner and within the time required by the provisions of said law, but this only in case the sale and transfer should be made under the contract first mentioned at the time agreed on, to wit, November 15, 1882.

As it is conceded that Telfener made default under the first-mentioned contract on the 15th of November, 1882, and that the sale and transfer under said contract was never carried out, the second-mentioned contract became wholly inoperative and irrelevant; and the rights of the plaintiff became fixed, definite, and certain, on the 15th of November, 1882, at the time defendant, Telfener, made default. Under these circumstances, we fail to perceive any obligation resting upon Russ to either complete the surveys, or file the same in the general land office. Whatever was done by Russ after the 15th of November to perfect the surveys and file the same was done at his own cost and at his own risk, and could in no wise affect the plaintiff in error, Telfener, because the rule for damages in the case was, as declared by the supreme court in Telfener v. Russ, supra, as follows:

"On the 15th of November, he [Russ] possessed all the right to the land which he ever possessed, and, assuming that the defendant then failed to make the payment which he had agreed to make, all the damage suffered by the plaintiff was the difference between the value of the right, as stipulated to be paid, and the amount which could then have been obtained on its sale."

The sixth assignment of error is that the court erred in overruling the defendant's motion for a new trial, and in not setting aside the verdict rendered and granting a new trial. It is well settled that a refusal to grant a new trial cannot be assigned as error. On the record, as presented to us, we find no reversible error, and therefore we are compelled to affirm the judgment.