SCHLEE, ᴇᴛ ᴜx. *v.* BRYANT

[No. 540, September Term, 1966.]

690

*Decided October 31, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, OPPENHEIMER,[1] McWILLIAMS, FINAN, JJ., and CLAPP,
J. Associate Judge of the Sixth Judicial Circuit, specially as-
signed.

*Homer R. Miller,* with whom was *Jack Pinkston* on the brief,
for appellants.

---

1. Reporter's Note: Oppenheimer, J. participated in the hearing
of this case, in the conference in regard to its decision and in the
adoption of this opinion, but he had retired from the Court prior
to the filing of the opinion.

*Murray K. Josephson* for appellee.

FINAN, J., delivered the opinion of the Court.

This is an appeal by vendors from a decree granting specific performance of a real estate sales contract. This Court affirms the decree for specific performance.

The contract, dated September 2, 1963, was drawn on a standard sales contract form, in prevalent use in Maryland, by seller's broker, Hans W. Nestler. It provided for a total purchase price of $42,000 of which $32,000 was to be secured by a deed of trust, and a deposit by Bryant, the purchaser, of a $2,000 check to be held by the "Nestler Realty Co." In addition, the purchaser was given the option to make percolation tests within the first two weeks, and if the results were not satisfactory, purchaser could terminate the agreement and have his deposit returned. Paragraph 9 of the printed form reads:

> "Within 90 days from the date of acceptance hereof by the owner, or as soon thereafter as a report on the title can be secured if promptly ordered, the seller and purchaser are required and agree to make full settlement in accordance with the terms hereof. If the purchaser shall fail so to do, the deposit herein provided for *may* be forfeited at *the option of the seller,* in which event the purchaser shall be relieved from further liability hereunder, or *without forfeiting the said deposit the seller may avail himself of any legal or equitable rights which he may have under this contract.* In the event of the forfeiture of the deposit the seller shall allow the agent one-half thereof as a compensation for his services to him." (Emphasis supplied.)

However, the parties substituted "shall" for the underscored "may" and deleted the other emphasized words, so that the effect was to impose a forfeiture of the deposit on the purchaser in the event of a default, while the vendor waived all further legal and equitable remedies. The contract was signed by Bryant as "Purchaser," Schlee as "Seller" and Mrs. Schlee as "Wife of Seller."

The $2,000 check was turned over to Nestler, who rather than depositing it, held the check itself until the settlement date. From the record, it appears that Bryant had sufficient funds in his checking account to cover the draft representing the deposit on September 2, when he executed the agreement, and on December 4, the actual date of settlement. However on December 2, which the appellants claim was the last day for settlement under the contract, the bank statement indicated an overdraft of $339.28.

When satisfactory percolation tests were completed within the two-week option period, Bryant orally informed Nestler, whom he believed to be agent of the Schlees, that he was willing to proceed to settlement and that Nestler should order a title search and arrange for settlement. Nestler apparently failed to inform the Schlees that Bryant had so agreed, or that settlement had been set for December 4. On Sunday, December 1, Mr. Schlee received a call from Nestler informing him of the settlement on the following Wednesday. However, Schlee expressed his reluctance to talk business as appears from the record:

> Then he [Nestler] said: "Well, how about going to settlement on Wednesday, December 4th, in the afternoon?"
> I said: "No, absolutely. I have something else that day."
> "Well, how about 11:00 o'clock in the morning?"
> I said, "I'll see."
> I did not agree to go to settlement on December 4th, I did not infer it, I did not hint it. And I shut him off at that point.
> Q. Why, Mr. Schlee? You say you shut him off at that point. A. Because we had gotten into a matter of business on Sunday, and it was getting to be a horse trading deal.

Although the 90-day period would have expired December 2, the evidence shows that the surveyor was unable to complete his survey until that date, and that it was not received by Nestler until that day or the next day, Tuesday, December 3. On

Wednesday, Mr. and Mrs. Bryant and Nestler appeared at the place of settlement, the requisite note and deed of trust were executed, and the purchaser tendered a certified check for the cash balance due as per the settlement sheet. The Schlees did not attend the settlement. Appellee and Nestler then sent registered letters demanding that Mr. and Mrs. Schlee perform the contract, but the appellants, through their attorney, purported to declare a forfeiture of the deposit, and demanded the deposit from the broker, Nestler.

This case presents the following questions which the Court will answer *seriatim:*

(1) Was the contract which the appellee seeks to have specifically enforced in essence an option agreement, which after being exercised by the appellee ripened into an executory contract for the purchase of land?

(2) Was the verbal acceptance of the option, communicated by the appellee to the real estate broker, binding on the appellants?

(3) Assuming the answer to questions (1) and (2) to be in the affirmative, was the appellee's tender of performance made within a reasonable time?

(4) Was the $2,000 check, which was presented by the appellee to the broker at the time of the execution of the contract, valid consideration, there having been adequate funds in the appellee's checking account both at the time of execution and the date of settlement, but for which funds were not in appellee's account on the date that appellants contend should have been the date of settlement?

(5) Was appellant Hazel S. Schlee, wife of appellant Herbert J. Schlee, bound as one of the sellers, she having signed the agreement as "Wife of Seller" rather than as "Seller," title to the property being held by the Schlees as tenants by the entireties?

We believe that as in *Messina v. Moeller,* 214 Md. 110, 133 A. 2d 75 (1957), the present instrument constituted in essence an option to purchase.

i

In *Messina* this Court was called upon to construe a similar instrument. It provided for a cash down payment and terms of

financing, and also for settlement within 35 days, or as soon thereafter as a report on the title could be obtained. It was further agreed that settlement need not be made until the lots were approved for septic tank installation by the County Board of Health. If approval was not forthcoming, the deposit was to be returned to the purchaser and the contract was to be of no effect. The contract also contained substantially the same printed default clause as appears in the contract in the instant case, and similar words were deleted by the parties, so that in both contracts, if the buyer failed to settle in time, he forfeited his deposit but the vendor retained no further rights against him. Speaking for the Court, Judge Hammond (now Chief Judge) stated: "Clearly, such a contract is an option given for a valuable consideration and is binding and effective according to its terms." *Id.* at 113, 133 A. 2d at 76. We believe that, as in *Messina*, the present instrument constituted an option to purchase.

The Maryland law is clear that after an option has been exercised by the optionee's proper manifestation of acceptance, it no longer exists, but is replaced by an executory bilateral contract. *Simpers v. Clark,* 239 Md. 395, 401, 211 A. 2d 753, 756 (1965); *Trotter v. Lewis,* 185 Md. 528, 534, 45 A. 2d 329 (1946).

ii

The next question to be answered is whether the appellee properly exercised the option so as to create a specifically enforceable executory contract. Appellants argue that the mere manifestation of assent was not enough, that the agreement required a cash payment at settlement and the execution of a deed of trust for the balance, all within ninety days, and anything less could not constitute acceptance. The appellee's theory, with which the lower court concurred, is that the mere communication from Bryant to Nestler, representing the sellers, had the effect of exercising the option. In *Foard v. Snider,* 205 Md. 435, 446, 109 A. 2d 101 (1954), Judge Hammond for the Court discussed this very point.

> "Each such agreement must be scrutinized to see what it requires to be done within the specified time, either

expressly or by necessary implication. Does it require completed performance, that is, actual payment, or does it require tender of the agreed price? Generally, there is contemplated only a notice of acceptance of, and a readiness and willingness to perform, the irrevocable offer which is an option. Whatever the option requires must be done. * * *. When an optionee duly signifies his purpose to accept an option for the purchase of real estate, and tenders the amount of the purchase price *if required,* he is entitled to specific performance of the contract. * * *. If there is required only notice of acceptance of the irrevocable offer, there is, in effect, upon acceptance, the equivalent of an ordinary contract of sale, and a reasonable time will be given for performance."

Judge Hammond also referred to Professor Corbin's comprehensive treatise on Contracts. In 1A Corbin, *Contracts* § 264, p. 514 (1963), the author notes that:

"In most cases, the courts are likely to interpret the agreement in such a way that the contract will be held to be bilateral after a proper notice of acceptance. In such cases, the notice of acceptance is operative without any tender of the price; and this is true even though such tender may still be a condition of the duty to execute a conveyance. * * *.

"In most cases the contemplated mode of acceptance by an option holder is the giving of a notice resulting in a bilateral contract."

Although the contract provided for *settlement* within 90 days of acceptance by the seller, nothing in the language sheds light on the intention of the parties with regard to acceptance of the offer. Accordingly, we believe that under the prevailing rule appellee properly accepted by so indicating to the broker, Hans Nestler.

The further argument is made, however, that even if the option permitted merely *notice* of acceptance rather than actual performance, such notice was conveyed to Nestler rather than

the appellants, and Nestler was not the agent of the Schlees for the purpose of receiving notice.

The only references in the contract to Nestler, or his alter-ego, Nestler Realty Co., appears in paragraph 10, which reads:

> "Settlement is to be made at the office of attorneys to be designated by purchaser or at the Title Company searching the title, and deposit with the Title Company or with Nestler Realty Co. of the purchase money, the deed of conveyance for execution and such other papers as are required of either party by the terms of this contract shall be considered good and sufficient tender of performance of the terms hereof."

and paragraph 14, which provides for the broker's commissions, and authorizes him to hold the deposit until settlement. Hans W. Nestler signed the contract for the Nestler Realty Co. in an undesignated representative capacity. It can be concluded from a survey of the duties imposed upon Nestler Realty Co. in paragraph 10, that the Schlees regarded it as an alternate settlement agency. It is therefore entirely reasonable to conclude, as did the appellee, that Nestler was given the same authority of a settlement agent to accept tender of performance or notice of exercise of the option.

Appellants nevertheless argue that Nestler was in the first instance a business associate of Bryant, and was originally authorized by Bryant to search for land in the vicinity of Bryant's other real estate holdings. In addition, appellants raise the point that an agency may not be established from the mere fact that vendors were obligated to pay brokerage fees and that any authority to act for the vendors must arise from the contract terms which in this instance are limited to paragraphs 10 and 14, as we have noted.

However, the chancellor found that the authority expressly granted the broker established Nestler as a general agent of the vendors for the purpose of this transaction, and that the broker held an implied authority to receive notice of acceptance from Bryant, and we think his finding was justified.

iii

We are also of the opinion that the appellee tendered per-

formance within a reasonable time. As we have already mentioned, the instrument was in substance an option, and as an option the appellants could properly place a 90-day limit on acceptance. The standard rule recognizes that in options to purchase, time is usually of the essence. *Maryland City Realty, Inc. v. Vogts,* 238 Md. 290, 208 A. 2d 701 (1965) ; *Shea v. Marton,* 214 Md. 539, 136 A. 2d 247 (1957) ; *Clarke v. Lacy,* 213 Md. 482, 132 A. 2d 478 (1957). The reason for this rule lies in the basic nature of the option itself. The optionor irrevocably commits himself for an agreed upon period, yet he is only protected by the express condition that the optionee exercise the option within that period. Therefore, both in law and equity, the optionee must perform the condition within the time agreed upon, or else the option terminates. However, after Bryant exercised the option, it was extinguished and replaced by an executory bilateral contract for the sale of land. Unless the terms of the contract indicate to the contrary, time is no longer of the essence, and the parties need only settle within a reasonable time. For a comprehensive discussion of this principle of law see the opinion of this Court written by Judge Horney in *Kasten Co. v. Maple Ridge Co.,* 245 Md. 373, 377, 226 A. 2d 341, 344 (1967). See also *Maryland City Realty, Inc. v. Vogts,* 238 Md. 290, 208 A. 2d 701 (1965).

A review of the record convinces the Court that December 4, the day Bryant tendered performance of the contract, was certainly within a reasonable time. It was only two days later than the ninetieth day which appellants believed to be the last day for settlement. Furthermore, the report on the title from the surveyor, which was ordered soon after the September telephone call from Bryant to Nestler was not even completed until December 2, and the contract itself waived the ninety-day period in the event of a late report on the title. This Court recently held in *Kasten Co. v. Maple Ridge Co., supra,* that where neither the contract nor the conduct of the vendor indicates that time was of the essence, tender of performance five days after expiration of the date of settlement stipulated in the contract was not unreasonable. This Court is of the opinion that the purchaser in this case was ready, willing and able to perform his obligations under the contract within a reasonable time.

iv

On September 2, Bryant, the purchaser, delivered to Nestler a $2,000 check drawn on his special account at the Potomac National Bank of Potomac, Maryland. The bank statements, which are part of the record, indicate that throughout most of September as well as on December 4, there were sufficient funds on deposit to cover the check. However, because the account was overdrawn on December 2, which the appellants contend was the last day that the parties could have made settlement, they argue that there was a failure of consideration for the option.

We agree with Judge Shearin below that, rather than retaining possession of the check for three months, Nestler should have deposited the check in an escrow account.

However, we think the significant factor with regard to the deposit check is that there were funds in the purchaser's bank account to cover the check on the day that he made tender of it and for a reasonable time thereafter, and there were also sufficient funds on deposit to cover the amount of the check on the day of settlement.

v

Appellants raise the argument that Mrs. Schlee was not bound as a principal because (1) she signed the contract as "Wife of Seller"; and (2) Nestler, the broker, never communicated directly to her Bryant's notice of acceptance.

The short answer to the first contention is that the subject property was held by appellants, Mr. and Mrs. Schlee, as tenants by the entireties, and the wife's signature on the contract would be meaningless if it had been affixed to the document in any capacity other than as one of the tenants by the entireties. The only other purpose for such a signature would have been to release a wife's inchoate right of dower. However, since the title was held here by the entireties no inchoate right of dower existed to be released.

The second contention raises a question which is purely academic. We think that notice of acceptance of the option given in September by the purchaser, Bryant, to the broker, Nestler, was notice to his principals, which included Mrs. Schlee as she together with her husband had signed the sales contract. As was

stated by Judge Sybert, for the Court, in *Durst v. Durst,* 225 Md. 175, 180, 169 A. 2d 755, 757 (1961) : "It is axiomatic that knowledge acquired by an agent in the course of his agency is imputed to his principal." See also *Boring v. Jungers,* 222 Md. 458, 463, 160 A. 2d 780, 783 (1960) and cases cited therein.

As a matter of business accommodation, the agent Nestler had to get word to the Schlees as to when they should execute the deed and receive the purchase money, but this notification on his part had no legal effect on the liabilities of the parties under the contract. As previously stated in this opinon the lower court, permissibly we think, found Nestler to be the agent of the sellers.

*Decree affirmed, with costs.*