DIXON, ET AL. *v.* HAFT, ET UX.

[No. 264, September Term, 1968.]

*Decided May 30, 1969.*

The cause was·argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Charles C. W. Atwater,* with whom were *David A. Carney* and *Mylander & Atwater* on the brief, for appellants.

*James S. McAuliffe, Jr.,* with whom were *Heeney, McAuliffe & McAuliffe* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

This is a suit at law by the owners of land against those to whom they had granted an option to buy the land to recover damages alleged to have been suffered when the potential buyers, after having later agreed to do so, would not consummate the purchase. A demurrer to the declaration was sustained and the facts we set forth are the well-pleaded allegations of the declaration as particularized.

On January 6, 1966, the appellants, owners of twenty-five acres of land in Anne Arundel County, entered into a written "memorandum of sale" with Herbert H. Haft, an appellee who expressed a real desire and intention to buy the land. The writing recited that Haft had put up a $5,000 deposit, the purchase price was $300,000, of which $85,000, including the deposit, would be paid in cash and the balance would be in the form of a first deed of trust, joined in by Haft and his wife as guarantors, in the amount of $215,000 payable in specified installments plus interest at the rate of 6% per annum. Section 8 of the writing provided:

> "Time is of the essence of this Contract and within ninety days from the date of acceptance hereof by the Seller, or within ninety days after all contingencies have been eliminated or as soon thereafter as a report on the title can be secured if promptly ordered, and an appointment can be made with the Title Company for settlement, the Seller and Purchaser are required and agree to make full settlement in accordance with the terms hereof. *If the Purchaser shall fail to do so, the deposit herein provided shall be forfeited as the sole remedy of the Seller and the Purchaser shall thereby be relieved from further liability hereunder."* (Emphasis added)

At the instance of the purchasers, settlement was scheduled

for April 6, 1966, at the office of the title company, Capitol Title & Escrow Corporation, that had searched the title for them. Present were the owners of the land, who delivered to the title officer their executed deed and agreed to the figures shown on the settlement sheet calculated as of April 6, 1966, and Arthur L. Content, Esq., "the duly authorized agent of the purchasers [Haft and his wife]," who asked for a delay in the actual settlement until April 11 in order to verify with his principals that the terms of the proffered deed of trust were those agreed on and to verify that his principals had agreed to accept the survey furnished by the sellers. An agreement to postpone the fiscal settlement until April 11 thereupon was entered into, but the purchasers, without relying on the verifications, refused to settle, apparently because they felt the land was not worth the purchase price.

The appellees, in seeking particulars, asked for a summary of "the content of all [oral] agreements upon which the suit was based" and the extent of the liability asserted against them. In answer, the appellants said:

"On April 6, 1966, settlement was scheduled in the office of Capitol Title & Escrow Corporation which was attended by the sellers and by the authorized agent for the purchasers. At that time the sellers fully performed the contract and delivered the executed deed. The purchasers agreed to consummate the settlement. The duly authorized agent for the purchasers stated the only condition was the verification by him that the method of payment in the proposed Deed of Trust (which method was set forth in the contract between the parties) was understood by the purchasers and the verification that the purchasers had agreed in accordance with the terms of the contract to accept the survey furnished by the sellers. Subject to these two conditions only the contract was consummated, and the sellers delivered the deed upon the express agreement of the purchasers to pay the amount shown due on the settlement sheet on April 11, 1966. The purchasers further required that all documents, including the executed deed, be left with the escrow agent, Capitol Title &

Escrow Corporation, which escrow agent was acting on behalf of the purchasers as their agent to consummate the settlement."

The following letter addressed to the sellers was written on the stationery of the title company:

"This letter will confirm the understanding of the parties that settlement of the purchase contract dated December 20, 1965 by and between Herbert H. Haft as buyer and William E. Dixon and Joseph Schwartz as sellers, which was scheduled for settlement on April 6, 1966, shall be extended to Monday, April 11, 1966. The reason for the extension is that undersigned desires to confirm that method of payment as set forth in proposed deed of trust and note is in accord with the understanding of the sellers and that price should not be adjusted since no survey was made.

"All adjustments shall be made as of April 6, 1966 and the deed, deed of trust and purchase money note shall be dated April 6, 1966. Until April 11, 1966 all documents shall remain at Capitol Title & Escrow Corporation.

Very truly yours,
/s/ ARTHUR L. CONTENT,
on behalf of buyer,
Attorney At Law.

Accepted:
/s/ WILLIAM E. DIXON,
on behalf of Seller."

Damages of $75,000 were claimed for the depreciation in the value of the land after April 6, of $25,500 for loss of interest on the $300,000 purchase price, of $2,107.14 a year for taxes, and $5,000 for refinancing costs. The $5,000 deposit was credited against the damages claimed.

Judge Moore, feeling that the only recourse the sellers had under the contract was to retain the forfeited $5,000 deposit, sustained the purchasers' demurrer and when the sellers continued to reject the court's view of the controlling law and

notified the court they would not amend, denied sellers' motion that he enter judgment for the purchasers for costs. We treat the appeal, under the circumstances, as one from an order sustaining a demurrer to a declaration without leave to amend.

We think the trial court took too narrow a view of the effect of the contract entered into on April 6. The so-called "Memorandum of Sale" of January 6, 1966, was one of that strange breed of agreements relating to the sale and purchase of land which flourishes in Montgomery County where seemingly it is regarded as a contract of sale although in fact and in law it is essentially "an option given for a valuable consideration." *Messina v. Moeller,* 214 Md. 110, 113; *Schlee v. Bryant,* 247 Md. 689, 694. Under such an agreement generally as well as in this case, the purchaser has the absolute right under the contract language ("if the Purchaser shall fail [to settle] the deposit * * * shall be forfeited as the sole remedy of the Seller * * *,") to choose between consummating the purchase on the agreed upon terms or of walking away, for any reason or no reason, with no obligation or liability whatever save the loss of his deposit. These options were still those of the purchaser in the case before us on April 6 when the settlement he had called was held. He chose not to walk out of the agreement and forfeit his deposit; rather, according to the declaration as particularized, he and his wife, through their duly authorized agent, chose for valuable considerations to make an oral contract to perform, confirmed by a letter signed by the parties to be charged. Time explicitly was of the essence of the original agreement (as it is in option agreements even if not specified). Haft and his wife, through their agent, in effect agreed with the sellers:

> "If you will deliver the deed, agree to the settlement sheet figures as of today and will extend the time for actual settlement five days, we will agree to give up our right not to perform and will exercise our option to take and pay for the land on the terms agreed on and will settle five days later on today's figures; unless within the five days we find the terms of the deed of trust and the matter of the surveys were not as agreed upon."

We held in *Messina v. Moeller,* 214 Md. 110, and *Schlee v. Bryant,* 247 Md. 689, both referred to earlier, that the purchaser gave evidence that he had chosen his option to perform rather than reject his right to buy the property there ensued a contract binding on both sides that justified specific performance by either. In *Schlee* the evidence of the intent of the purchaser to perform was found in an oral notification to the broker that he was ready to proceed to settlement, and the Court held that an irrevocable executory bilateral contract followed.

Two cases, one in California and one in New Jersey, are apposite and persuasive. In *Neher v. Kauffman,* 242 P. 713, 717 (Cal. in Bank), a case not too dissimilar on the facts, the Court held that if escrow instructions contain all the necessary elements to make a contract, they are to be regarded as a contract in writing between the parties. The Court said:

> "It is immaterial whether the escrow instructions herein be regarded as merely supplemental to, and by way of performance of, the contract of December 11, or whether they be regarded as a subsequent contract in writing, modifying the terms of the prior contract. A contract in writing may be modified by a later contract in writing, and the covenants and agreements of one party thereto furnish a sufficient consideration to support the promises and agreements of the other party thereto."

In *Sunset Beach Amusement Corp. v. Belk* (N. J.), 158 A. 2d 35, a case quite similar on the facts, the Court, speaking through Chief Justice Weintraub, said at pp. 37-38:

> "The parties agree that under this provision the buyer could elect either to perform or to pay the deposit of $25,000 as liquidated damages. * * * Defendants insist the buyer could choose to lose the deposit at any time up to the actual transmittal of the deed and purchase moneys by the title company to the respective parties despite the buyer's initial decision to perform and the settlement meeting held for that purpose. The sellers, on the other hand, maintain that the buyer had

to elect between performance and payment and that an election to perform was final. * * * Further, sellers urge, the buyer did in fact make final settlement within the fair meaning of the phrase 'in the event of the buyer not making final settlement in accordance with the terms of this agreement,' and hence the die was cast upon the most generous view of the covenant that may be accorded the buyer. With this we agree, and hence we need not consider whether an election to perform would without more have barred a later decision to pay damages. We are satisfied the trial court properly found for plaintiffs and ordered completion of the settlement.

"The meeting of August 15 was a rather typical final closing. The executory contract of sale was consummated subject to some loose ends which the parties conceived to be too minor to warrant postponement of the event. What remained to be done or cleared related to the sellers' performance and not to the buyer's, and the sellers disposed of the stipulated items prior to the buyer's attempt to reverse the election to perform. As defendants themselves stated in their pretrial memorandum, 'The parties endorsed on the settlement sheet their mutual agreement to consummate on condition, among others, that plaintiffs would remove title exception No. 2 requiring a survey disclosing lines and physical conditions, the buyer on its part waiving certain other exceptions raised by the Title Company.' The contract of sale was thus superseded *pro tanto* by the agreement for the deposit in escrow of the deed and the moneys. Neither the seller nor the buyer could unilaterally rescind the arrangement * * * in the absence of an express stipulation permitting it. The settlement agreement contained no option to pay damages, and for the obvious reason that none was intended.

"A brief resume shows the parties considered a final settlement to have been made on August 15."

See also Corbin *Contracts* (1964 Ed.), Vol. 5, § 1079, Vol. 1A,

§ 249, and compare *Maryland Title & Escrow Corp. v. Kosisky,* 245 Md. 13, and 30A C.J.S. *Escrows* § 9.

We think and hold that the purchasers bindingly opted on April 6 to perform and will not be heard to say that they, under the particularized allegations of the sellers' declaration, did not contract to consummate the purchase according to the terms of the original agreement as supplemented or modified or both by the second agreement, subject to the reserved right to make the verifications mentioned. We of course intimate no opinion, and make no holding as to the ability of the sellers to prove either the essentials of their allegations or their ultimate right to the damages they claim.

*Order reversed, with costs.*