THE KASTEN CONSTRUCTION COMPANY,
INC. ETC. *v.* JOLLES ET AL.

[No. 401, September Term, 1970.]

*Decided June 7, 1971.*

528

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Charles C. W. Atwater,* with whom were *David A. Carney* and *J. Edward Martin, Jr.,* on the brief, for appellants.

*Edward H. Kerman,* with whom was *Julius I. Fox* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

In *Dixon v. Haft,* 253 Md. 692, 253 A. 2d 715 (1969) this Court was called upon to interpret the legal effect of a provision in a real estate contract which permitted the purchaser to renege before settlement and suffer only the forfeiture of a $5,000 deposit. Speaking for the Court, Chief Judge Hammond identified the so-called "Memorandum of Sale" in that case as

> "one of that strange breed of agreements relating to the sale and purchase of land which flourishes in Montgomery County where seemingly it is regarded as a contract of sale although in fact and in law it is essentially 'an option given for a valuable consideration.' *Messina v. Moeller,* 214 Md. 110, 113; *Schlee v. Bryant,* 247 Md. 689, 694. Under such an agreement generally as well as in this case, the purchaser has the absolute right under the contract language ('if the Purchaser shall fail [to settle] the deposit * * *

shall be forfeited as the sole remedy of the Seller * * *,') to choose between consummating the purchase on the agreed upon terms or of walking away, for any reason or no reason, with no obligation or liability whatever save the loss of his deposit." 253 Md. at 696.

The Court also ruled that if this option were exercised by a subsequent agreement to perform, an executory bilateral contract would come into existence and that the clause providing for the forfeiture of the deposit and relieving the purchaser of further liability, which related solely to the option agreement, would no longer be the measure of damages for breach of the newly formed contract. *Dixon, supra,* 253 Md. at 698-99; *Sunset Beach Amusement Corp. v. Belk,* 31 N.J. 445, 158 A. 2d 35 (1960). Because *Dixon* came to us in the posture of an appeal from an order sustaining a demurrer without leave to amend there was no occasion for a discussion of the measure of damages which might be occasioned by such a breach.

In an accommodating attempt to resolve the damage questions left unanswered in *Dixon,* The Kasten Construction Company, individually and to the use of the same William E. Dixon (we shall refer to these parties jointly as "Kasten" or "appellant"), brought suit for damages for the breach of a contract quite similar to the agreement that was before us in *Dixon.* Dixon is the counsel for The Kasten Construction Company; to his use Kasten was awarded a judgment for damages in the amount of $1,000 by the Circuit Court for Montgomery County to reimburse Dixon for the amount which he paid for a one month extension of a loan of $225,000 secured by a deed of trust covering the 27.15 acre tract of land in Anne Arundel County near Glen Burnie, which was the subject of the contract of sale.

Kasten owned the land, which had been zoned for apartment development, and had offered it for sale to

the appellees, Gabriel Jolles and Hyman Kaplan, for $324,000. The contract, which was entered into in June of 1965, required the purchasers to place $10,000 in escrow, subject to forfeiture should they fail to exercise their purchase option. There was a provision that settlement was to be made within ten days after sewer and water lines reached the property or as soon thereafter as a report of title could be secured.

At about the time the sewer line reached the property in September 1966, Jolles ordered an examination of title to the property, fixed settlement for September 10, and then requested an extension. There was no challenge to Judge Clapp's holding that the request for an extension and a threatened action for specific performance by the purchasers converted what until then had been an option agreement into a bilateral executory contract, which the lower court found to have been breached by the appellees. As the purchasers have not appealed, there is no reason to discuss whether or not there was a breach (although we think there clearly was) and we need address ourselves only to the question of damages. In responding to the fusillade of questions Kasten has raised concerning the measure of actual damages, we shall affirm the trial court's decision to limit recovery to $1,000.

The appellant's line of argument lacks both incisiveness and specificity. Kasten seems to concede that the normal measure of damages for a purchaser's breach of contract to buy real property is the difference between the contract price and the fair market value of the property at the time of breach but since it failed to prove value below, it argues this is not the exclusive standard of measurement. It then suggests that the amount obtained on a resale of the property can also serve as evidence of value and that generally, any foreseeable loss resulting from the breach, including unsuccessful efforts to mitigate damages, can be taken into account in computing damages. It finally argues that because the appellees willfully breached the contract that they are not

entitled to the return of the down payment. Numerous decisions are cited in support of these contentions, but the trial court found as a fact that the only element of damage proved was the payment of $1,000 to secure an extension of the mortgage loan, and we cannot say, after a review of the record, that this was clearly erroneous. Rule 886.

In general, the measure of damages when a vendee breaches a contract to purchase real estate is the difference between the contract price and the fair market value at the time of breach. The trial judge and the parties have indicated that there are no Maryland cases that specifically adopt this rule, although the appellees have unearthed a number of older Maryland cases which apply this standard of measurement when the vendor has failed to convey property under a contract to purchase. *Horner v. Beasley,* 105 Md. 193, 65 A. 820 (1907) ; *Clagett v. Easterday,* 42 Md. 617, 628 (1875) ; *Marshall v. Haney,* 4 Md. 498, 508 (1853) ; *Cannell v. M'Clean,* 6 H. & J. 297 (1823). Our own research confirms the apparent absence of a comparable result in Maryland against a vendee. We think, however, that this rule is backed by the great weight of authority and we specifically adopt it as the law of this state. *Telfener v. Russ,* 145 U. S. 522, 12 S. Ct. 930, 36 L. Ed. 800 (1892) ; 11 *Williston on Contracts* § 1399 (3d ed. 1968) ; 5 *Corbin on Contracts* § 1098 A at 535 (1964) ; Annot. "Measure of Damages for Purchaser's Breach of Contract to Buy Real Property" 52 A.L.R. 1511 (1928) and numerous cases collected there; cf. *Macke Co. v. Pizza of Gaithersburg, Inc.,* 259 Md. 479, 270 A. 2d 645 (1970) ; *Green Properties, Inc. v. Livingston,* 230 Md. 193, 186 A. 2d 475 (1962).

The rule does the appellant little good, for it appears that no attempt was made, by expert testimony or otherwise, to establish value at the time of breach. The injured vendor may introduce evidence of a resale of the property as an alternative means of establishing dam-

ages, *Telfener v. Russ, supra;* 52 A.L.R. *supra,* at 1514. But in such a case, the burden is upon the seller to establish that the sale was fairly made within a reasonable time after breach. *See Obrecht v. Crawford,* 175 Md. 385, 394-96, 2 A. 2d 1 (1938). The trial judge's finding, which we do not propose to disturb, that the labyrinthine transfers and attempts at refinancing which resulted in Kasten's loss of the property some fourteen months later in no way resembled arm's length transactions is a ruling that forecloses this approach to computing damages.

Appellant further argues that fair market value at the time of breach or the amount realized on resale within a reasonable time thereafter are not the only methods of computing the damages resulting from the purchaser's default. Kasten falls back on the landmark English case of *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng. Rep. 145 (1854) to support the rather general proposition that an innocent party to a broken contract should be awarded damages that could "reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or, such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract . . . ." We have no quarrel with Baron Alderson's statement of this rule, as our predecessors specifically approved it in *United States Telegraph Co. v. Gildersleve,* 29 Md. 232 (1868), but rather with Kasten's attempt to apply it to the facts of this case.

We have recently had occasion to review the "foreseeability rule" as set forth in *Hadley v. Baxendale,* have indicated that the modern trend has been to allow greater flexibility in proving damages and have recognized that the certainty rule of years past has been modified to allow proof of damages with "reasonable certainty." *M & R Contractors & Builders v. Michael,* 215 Md. 340, 138 A. 2d 350 (1958) ; *see Macke Co. v. Pizza of Gaithersburg, Inc., supra.* Again, we are back where we began,

to the trial court's finding that there was no evidence of damage other than the amount paid for the extension of mortgage.

Kasten quite baldly asserts that the appellees are liable for a sum equivalent to the difference between the contract price and the amount of the loan secured by the deed of trust on the property, *i.e.*, the equity which it ultimately lost. The vice in this approach is that the contract price may or may not have represented fair market value as the lower court indicated. On the record before it, fair market value could conceivably have exceeded the contract price, once sewer lines were in place. It is apparent that the contract price cannot be recovered, as such, by the vendor when the contract has not been performed, 92 C.J.S. *Vendor & Purchaser* § 376 at 311 (1955), and even assuming that the loss of the equity was a result of the breach it was a consequence not reasonably foreseeable. The trial court found that following the breach, the property had been transferred and refinanced and suggested that what ultimately happened to the property may well have been the result of further speculation by the sellers, rather than occasioned by the breach. Certainly losses sustained by speculation are avoidable and cannot be recaptured as a foreseeable consequence or as a reasonable effort to mitigate damages. 5 *Corbin on Contracts* § 1039 at 241, § 1044, at 278 (1964).

Returning to the $10,000 deposit, Kasten claims that it should not be returned to the appellees because they willfully breached the contract. It is not necessary, in the posture in which this case reaches us, to determine whether a part payment may be retained by a vendor in satisfaction of his claim for damages, as was the case in *Quillen v. Kelley*, 216 Md. 396, 401-02, 140 A. 2d 517 (1958). The appellant abandoned its claim to the deposit as liquidated damages and consciously chose to seek a recovery of actual damages. Having elected to pursue a different and potentially more rewarding remedy, it

cannot change the theory of its case after an unfavorable judgment, *Alois v. Waldman,* 219 Md. 369, 149 A. 2d 406 (1959).

*Judgment affirmed. Costs to be paid by the appellant.*