DIXON ET AL. *v.* HAFT

[No. 431, September Term, 1970.]

*Decided June 28, 1971.*

612

*Motion for rehearing filed June 22, 1971; denied June 24, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*David A. Carney* and *Charles C. W. Atwater,* with whom was *J. Edward Martin, Jr.,* on the brief, for appellants.

*James S. McAuliffe, Jr.,* with whom were *Heeney, McAuliffe & McAuliffe* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

This is an appeal from a judgment for costs in favor of the defendant, Herbert H. Haft, entered on a jury verdict in an action at law brought by William E. Dixon and Joseph Schwartz for damages for breach of a contract to purchase real estate.[1] We shall reverse and remand for a new trial because we are satisfied that the court below erred in denying an instruction requested by the plaintiffs Dixon and Schwartz.

This case was before us just two years ago, *Dixon v. Haft,* 253 Md. 692, 253 A. 2d 715 (1969). There we reversed an order sustaining Haft's demurrer, treating it as an order sustaining the demurrer without leave to amend, and remanded the case for trial. At trial, Dixon and Schwartz proved essentially what they had alleged in their declaration, which was summarized in *Dixon v. Haft, supra* and need only be briefly noted here.

---

1. At the conclusion of the plaintiffs' case, the motion for a directed verdict in favor of Mr. Haft's wife, Gloria G. Haft, originally joined as a defendant, was granted because she was not a party to the contract. No point is made of this by appellants.

On 6 January 1966, Dixon and Schwartz, the owners of a tract of some 25 acres in Anne Arundel County, entered into an agreement under which they agreed to sell the tract to Haft for $300,000, of which $5,000 consisted of a deposit made at the time the agreement was signed. The remainder of the purchase price, to be paid at settlement, which was to be 90 days from the date of acceptance of the agreement, was to be represented by $85,000 in cash and a deed of trust securing a purchase money loan of $215,000, with interest at 6%.

Paragraph 8 of the agreement dealt with damages payable in event of default:

> "Time is of the essence of this Contract and within ninety days from the date of acceptance hereof by the Seller, or within ninety days after all contingencies have been eliminated or as soon thereafter as a report on the title can be secured if promptly ordered, and an appointment can be made with the Title Company for settlement, the Seller and Purchaser are required and agree to make full settlement in accordance with the terms hereof. *If the Purchaser shall fail to do so, the deposit herein provided shall be forfeited as the sole remedy of the Seller and the Purchaser shall thereby be relieved from further liability hereunder."* (Emphasis supplied)

In *Dixon v. Haft, supra,* we described the effect of this provision:

> "\* \* \* The so-called 'Memorandum of Sale' of January 6, 1966, was one of that strange breed of agreements relating to the sale and purchase of land which flourishes in Montgomery County where seemingly it is regarded as a contract of sale although in fact and in law it is essentially 'an option given for a valuable consideration.' *Messina v. Moeller,* 214 Md. 110, 113 [133 A.

2d 75 (1957)] ; *Schlee v. Bryant,* 247 Md. 689, 694 [234 A. 2d 457 (1967)]. Under such an agreement generally as well as in this case, the purchaser has the absolute right under the contract language ('if the Purchaser shall fail [to settle] the deposit * * * shall be forfeited as the sole remedy of the Seller * * *,') to choose between consummating the purchase on the agreed upon terms or of walking away, for any reason or no reason, with no obligation or liability whatever save the loss of his deposit." 253 Md. at 696

It would appear that Haft authorized the ordering of an examination of title on 17 March 1966, and arranged for settlement to be made on 6 April 1966 at the offices of Capitol Title and Escrow Corporation in Washington. Dixon appeared at the settlement; Haft did not. Instead, Arthur L. Content, an attorney and a member of a firm, one of the partners of which held a general power of attorney from Mr. Haft, which was admitted in evidence, appeared and asked Dixon to extend the time within which settlement had to be made under the agreement. At trial, Haft, called as an adverse witness, acknowledged that Content was acting for him. This was confirmed by Content, who said that he had been instructed to obtain an extension or forfeit the deposit.

After some discussion with Dixon at Capitol Title, Content prepared the following letter, which was written on the stationery of the title company and signed by Content and Dixon:

"This letter will confirm the understanding of the parties that settlement of the purchase contract dated December 20, 1965 by and between Herbert H. Haft as buyer and William E. Dixon and Joseph Schwartz as sellers, which was scheduled for settlement on April 6, 1966, shall be extended to Monday April 11, 1966. The

reason for the extension is that undersigned desires to confirm that method of payment as set forth in proposed deed of trust and note is in accord with the understanding of the sellers and that price should not be adjusted since no survey was made.

"All adjustments shall be made as of April 6, 1966 and the deed, deed of trust and purchase money note shall be dated April 6, 1966. Until April 11, 1966 all documents shall remain at Capitol Title & Escrow Corporation.

Very truly yours

ARTHUR L. CONTENT

on behalf of buyer,

Attorney at Law.

Accepted:

WILLIAM E. DIXON

on behalf of Seller"

In *Dixon v. Haft, supra,* 253 Md. at 696, we concluded that the effect of this letter was to bring into being a new bilateral executory contract, something to this effect:

"If you will deliver the deed, agree to the settlement sheet figures as of today and will extend the time for actual settlement five days, we will agree to give up our right not to perform and will exercise our option to take and pay for the land on the terms agreed on and will settle five days later on today's figures; unless within the five days we find the terms of the deed of trust and the matter of the surveys were not as agreed upon."

relying on *Schlee v. Bryant,* 247 Md. 689, 234 A. 2d 457 (1967) where a similar result followed an oral notification by the purchaser under an option agreement that he was ready to proceed to settlement and on *Messina v. Moeller,* 214 Md. 110, 133 A. 2d 75 (1957) which held that when a purchaser under an option agreement

brought suit for specific performance a new bilateral executory contract came into being.

Of the arguments which Dixon and Schwartz make on appeal, we propose to consider principally only one: that the trial court erred in submitting the following special issue to the jury:

> "Was there a new contract entered into at the title company on April 6th between the plaintiff and Mr. Content, whereby the defendant exercised the option to purchase the land under the original December 1965 contract, as the plaintiff contends; or was there merely an extension of the settlement date from April 6th until April 11th, as the defendant contends took place?
>
> "If you determine that there was no such agreement to exercise the option, your answer must be 'No' thereto, and you need not answer any remaining issues. If you determine that there was such a new agreement entered into on April 6th between the plaintiff and Mr. Content, your answer to Issue One must be 'Yes,' and you must then determine the second issue."

Instructing the jury on the special issue, the trial judge said:

> "With respect to Issue One, whether a new contract was entered into at the title company on April 6th between the plaintiff and Mr. Content whereby the defendant exercised the option to purchase the land under the original December 1965 contract; or whether there was merely an extension of the settlement date from April 6th until April 11th, the Court instructs you that to establish a contract it must appear that the minds of the parties have met. In order that there may be an agreement, or mutual assent, the parties must have a distinct intention com-

mon to both and the minds of both parties must meet as to all the terms; and if any portion of the proposed terms is not settled, or no mode is agreed on by which it may be settled, there is no agreement or mutual assent such as is necessary to create the contract."

This was the heart of the case, because it was this first special issue which the jury answered in the negative. The point was put squarely to the court by a motion for a new trial made by Dixon and Schwartz, assigning these reasons:

"1. Because the Court erred in refusing to instruct the jury that if they found that the letter of April 6, 1966 was signed on that date by Mr. Arthur Content and by Mr. William E. Dixon, that their answer to issue one should be 'yes'.

"2. Because the Court erred in its ruling by not instructing the jury as a matter of law that the legal effect of (a) the Defendants' allowing settlement under the contract to be called on April 6, 1966; (b) attending the aforesaid settlement through a person purporting to be the Defendants' agent; [c] entering into an agreement as expressed in the letter dated April 6, 1966 (Plaintiff's exhibit 9), and directing that an executed deed for the subject property be left in escrow, regardless of any secret intent or instructions, the agent operated under on April 6, 1966, constituted an exercise of the option under the original agreement dated December 20, 1965. See *Schlee vs. Bryant,* 247 Md. 689, where oral notification of purchaser's intent to the broker representing the seller constituted sufficient evidence of the option to purchase.

"3. Because of error in the Court's instruction on special issue one (1), when the Court instructed (see page 7 of instructions) that:

'. . . to establish a contract, it must ap-

pear that the minds of the parties have met. In order that there may be an agreement, or mutual assent, the parties must have a distinct intention common to both, and the minds of both parties must meet as to all the terms; and, if any portion of the proposed terms is not settled, or no mode is agreed on by which it may be settled, there is no agreement or mutual assent such as is necessary to create the contract.'

The instruction as given was not an applicable statement of the law because it permitted the jury to assess subjective views of Arthur Content as to his secret intent and they were not given proper instructions to clarify the legal doctrine surrounding 'mutual assent'."

Ground 2, which raised the question, was rejected along with ground 1 at the conclusion of argument on the motion. Unfortunately the opinion filed by the Court gives no reason for its action. For the purposes of our consideration of the problem, we can only assume that the denial of the motion as to ground 2 was bottomed on the reason given for the rejection of ground 3, a failure to comply with Rule 554 d and a failure to object to the instructions before the jury was charged.

Rule 554 d provides:

"d. *Objection.*

"If a party has an objection to any portion of any instruction given, or to any omission therefrom, or to the failure to give any instruction, he shall before the jury retires to consider its verdict make such objection stating distinctly the portion, or omission, or failure to instruct to which he objects and the ground of his objection. Opportunity shall be given to make the objection in open court out of the hearing of the jury upon application either orally or in writ-

ing, made before or after the conclusion of the charge."

Under our practice, objections to instructions may be made either before or after the jury is charged, but must be made before the jury retires, *Brown v. Bradshaw,* 245 Md. 524, 226 A. 2d 565 (1967) ; *Merritt v. Darden,* 227 Md. 589, 176 A. 2d 205 (1962).

The trial of this case commenced on Wednesday; continued on Thursday; was resumed on Monday, and was concluded on Tuesday. Before adjournment on Wednesday, the court asked counsel to submit written requests for instructions on Thursday, in order that they could be considered over the weekend, since the court proposed to frame special issues and give written instructions to the jury.

Testimony was concluded about noon on Monday, and the jury was dismissed. In the afternoon, the court and counsel considered at some length the framing of issues and the nature of the instructions, none of which had yet been drafted by the court.

During colloquy, Mr. Atwater, counsel for Dixon and Schwartz, made his objection and stated the ground for it:

> "THE COURT: Are you complaining?
>
> "MR. ATWATER: No. I just really feel in essence that what this case boils down to, is there sufficient evidence, I mean, does the jury find that Mr. Content had apparent authority to bind his principal, if he signed this letter as an authorized agent.
>
> "THE COURT: Now it comes out. You are asking me to rule as a matter of [law] that if Content had authority this was a binding contract?
>
> "MR. ATWATER: I think, Your Honor, if this letter were signed—
>
> "THE COURT: Is that right?
>
> "MR. ATWATER: Yes, sir. If this letter

were signed by the Hafts I would say this is a binding contract without question. It is stronger than the Schlee case, in which the only evidence of intent to settle was a letter written to the broker who set it up for settlement.

"THE COURT: Yes, but everything in that—

"MR. ATWATER: This is stronger.

"THE COURT: Your posture before the Court of Appeals was even stronger than it is here, because you had it all your way. You not only had it all your way but you at that point were entitled to have it construed in the light most favorable to the plaintiffs.

"MR. ATWATER: Yes, sir.

"THE COURT: Which is not the case, is not the predicate for jury instructions; and the Court of Appeals did not say that the only issue on remand will be whether Mr. Content was acting as agent for, did not say that No. 9 [the 6 April letter] as a matter of law showed a new contract.

"MR. ATWATER: No, they did not, Your Honor, because they took our total allegations. But they did say in Schlee the evidence of the intent to perform was found in the oral notification to the broker that he was ready to proceed to settlement. And the court held that an irrevocable executory bilateral contract followed. In this case it is not—

"THE COURT: Was that a jury case?

"MR. ATWATER: The Schlee case?

"THE COURT: Schlee was an equity case; was it not?

"MR. ATWATER: Yes. But in the Schlee case it was simply the notification to the broker to order settlement, and they said that alone was sufficient to turn it into a bilateral contract. In this case, isn't Mr. Content's letter stronger than that?"

On Tuesday, after the jury had been charged, Mr. Atwater referred to the colloquy of the previous afternoon and said:

"MR. ATWATER: On that point, the effect of what I would like to do is take exceptions to the instructions in that I have asked the Court to instruct the jury that if they find that the letter was duly executed by both parties and contains agreement of the parties, that that constitutes a new agreement between the parties, assuming they find the second issue of authority of the agent.

"THE COURT: I think that goes back to your original contention yesterday.

"MR. ATWATER: Yes.

"THE COURT: In effect you are asking the Court to instruct the jury as a matter of law that if he had authority this was a binding contract.

"MR. ATWATER: Yes, sir."

In sum what appellants' counsel was urging was that the only question of fact to be submitted to the jury under appropriate instructions was that of Mr. Content's apparent authority, the subject of the second issue, which the jury never reached. At the same time counsel was urging that should the jury find Content to be Haft's agent, then the court should instruct the jury, as a matter of law, that a new contract had been brought into being by the letter of 6 April and that this contract had been breached.

Assuming, without deciding, that it was proper for the trial judge to insist that all objections be made prior to the conclusion of the Monday afternoon conference, compare *Fowler v. Benton,* 245 Md. 540, 226 A. 2d 556 (1967), it is clear that Mr. Atwater, on Monday afternoon, in the language of Rule 554 d, made his objection "stating distinctly the portion, or omission, or failure to

instruct to which he objects and the ground of his objection" and repeated it after the jury had been charged on Tuesday. Since we think the appellants were entitled to such an instruction, we need not reach the other questions raised on appeal, because had the jury been instructed that the 6 April letter created a new contract as matter of law, the contract would never have reached the jury.

Understandably, the trial court was hesitant about embracing whatever portents might have been sensed from *Dixon v. Haft, supra,* where the holding was restricted to the sufficiency of a declaration. Unhappily, it did not have before it our recent opinion in *Kasten Construction Co., Inc. v. Gabriel Jolles,* 262 Md. 527, 278 A. 2d 48 (1971), which dealt with a question which is at least the next of kin if not the offspring of the issue here raised. Oddly enough, it involved, at least peripherally, the same William E. Dixon, who had represented the seller and had an interest in the property which was being sold. The option agreement was virtually identical with the one before us. After the opinion in *Dixon v. Haft, supra,* was filed, the seller executed a timely and appropriate *volte-face* in its trial tactics, abandoning the claim for a forfeiture of the deposit and sought instead damages for breach of contract.

In *Kasten Construction, supra,* the contract purchasers had ordered an examination of title, requested an extension of time, which was denied, then fixed a day for settlement, which was never made, and later threatened to institute an action for specific performance. A suit for damages for breach of contract was brought by the seller and tried in the Circuit Court for Montgomery County by Clapp, J. without a jury. The case reached us as a quarrel over the measure of damages, and Judge Clapp's conclusion that the option agreement had been supplanted by a bilateral executory contract as a result of the request for an extension and the threat of specific performance went unchallenged, as well it might, under

*Schlee v. Bryant, supra,* 247 Md. 689 and *Messina v. Moeller, supra,* 214 Md. 110.

It seems clear to us, however, that *Kasten Construction,* when read in light of *Schlee* and *Messina,* would give ample support to the contention which Dixon and Schwartz made below: that if Content were Haft's agent, then the jury should have been instructed as a matter of law that the 6 April 1966 letter brought a new contract into being, which had been breached.

We are also convinced that the court should also have instructed the jury that Content was cloaked with apparent authority to act for Haft, as a matter of law. It is undisputed that at the title company Content told Dixon he was representing Haft and that one of his partners held a general power of attorney from Haft. Our conclusion is strengthened by the undisputed testimony adduced at the trial, in respect of a circumstance unknown to Dixon at the time of the conversation at the title company: that Content had been instructed either to obtain an extension of time or alternatively, to seek a refund of the deposit.

This is the archetype of the cases where the existence of an agency is a question of law for the court, 1 Mechem, *Agency* § 295 at 213 (2d ed. 1914):

> "And so where the facts are undisputed, and only one inference can reasonably be drawn from them, the court must determine whether they create an agency, and if so with what powers and limitations, and this is equally true whether it is sought to establish the agency by previous authorization or by subsequent ratification."

See also, Mechem, *Outlines of the Law of Agency* § 116 at 71 (3d ed. 1923).

There is ample authority for the proposition that apparent authority may be a derivation of trade customs, of which judicial notice may be taken. 1 Restatement, *Agency* 2d § 27 at 103 (1958) deals with the problem:

"CREATION OF APPARENT AUTHORITY: GENERAL RULE

"Except for the execution of instruments under seal or for the conduct of transactions required by statute to be authorized in a particular way, apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."

Comment d at 105-106 adds, in part:

"* * * Thus, a manager has apparent authority to do those things which managers in that business at that time and that place customarily do, as to persons who know that he is a manager, although they do not know what powers managers in such a business have. In such cases the manifestation is interpreted as meaning that the agent has the powers which such managers have, and those dealing with him are entitled to rely upon this as to the extent of the agent's authority, even though they do not know the powers of such managers. * * *"

See also, Mechem, *Outlines of the Law of Agency* § 93 at 60 (4th ed. 1952).

Judge Soper, for the Fourth Circuit, put it this way in *General Motors Truck Co. v. Texas Supply Co.,* 64 F. 2d 527, 529 (4th Cir. 1933) :

"We have then a case for the application of the rule that the act of an agent within the apparent but not within the real scope of his authority is binding upon the principal where a loss would otherwise result to one who has in good faith relied on such apparent authority;

an act being within the apparent scope of an agent's authority when a reasonably prudent person, having knowledge of the usages of the business, would be justified in supposing the agent is authorized to perform the act from the character of his known duties."

That case recognized the apparent authority of a regional manager of General Motors to agree to repurchase defective trucks. Other examples can be found in *Regal Shop Co. v. Legum Distributing Co.*, 206 Md. 267, 111 A. 2d 613, 50 A.L.R.2d 323 (1955) (authority of man who opened warehouse from inside to accept goods directed to be returned there) ; *Equitable Life Assur. Soc. v. Thomas*, 69 F. 2d 361 (8th Cir. 1934) (authority of agent who has collected mortgage interest to accept payment in satisfaction of debt) ; and *Van Dike v. Pullman Co.*, 145 Misc. 452, 261 N.Y.S. 292 (1932) (authority of regularly uniformed porter to accept baggage). For cases involving the authority of an attorney, see those cited in 7 C.J.S. *Attorney and Client* § 67 at 850-52, § 76(2) at 891-93, § 79 at 896-98 (1937). See also, 7 Am. Jur.2d *Attorneys at Law* § 100 at 111 (1963) and particularly *McGinnis v. Chance,* 247 Md. 393, 399, 400, 231 A. 2d 63 (1967) and *Bob Holding Corp. v. Normal Realty Corp.,* 223 Md. 260, 266, 164 A. 2d 457 (1960).

Under our view of the case, the only question which should have been submitted to the jury was that of damages and this can be accomplished on remand.

*Judgment reversed, case remanded for trial on the question of damages; costs to be paid by appellee.*