GREEN MANOR CORPORATION *v.* TOMARES ET AL.

[No. 13, September Term, 1972.]

*Decided October 12, 1972.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Ivan J. Shefferman* for appellant.

*N. Alfred Pasternak,* with whom were *Pasternak, Kaufmann, Kaufmann & Glosser* and *Morris D. Schwartz* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

This Court is once again called upon to decide whether a written document is a bilateral contract or "[o]ne of that strange breed of agreements relating to the sale and purchase of land which flourishes in Montgomery County" that in fact and in law is an option. *Dixon v. Haft,* 253 Md. 692, 696, 253 A. 2d 715 (1969). The ownership of a $20,000 deposit awarded to the purchasers by the trial court is largely dependent upon this determination. More precisely, we must decide whether an agreement entered into by Aaron Tomares, Robert E. Stein and Ellis Barron, appellees, relating to the purchase of a parcel of real estate in Bethesda from Green Manor Corporation, appellant, was a contract of sale or a sale of the privilege to purchase. This distinction becomes critical because time, even if not specified, is of the essence in an option contract, *Dixon v. Haft, supra; Shea v. Marton,* 214 Md. 539, 136 A. 2d 247 (1957) ; *Clarke v. Lacy,* 213 Md. 482, 132 A. 2d 478 (1957) ; *Foard v. Snider,* 205 Md. 435, 109 A. 2d 101 (1954) ; while in a bilateral contract, it is not unless specifically made so by the provisions of the agreement. *Kasten Co. v. Maple Ridge Co.,* 245 Md. 373, 226 A. 2d 341 (1967) ; *Doering v. Fields,* 187 Md. 484, 50 A. 2d 553 (1947) ; *Soehnlein v. Pumphrey,* 183 Md. 334, 37 A. 2d 843 (1944).

Green Manor first became acquainted with the purchasers when they responded to a newspaper advertisement for the sale of a parcel of land located on Fernwood Road between Greentree Road and Democracy Boulevard in Bethesda, Maryland. On October 21, 1970 the parties entered into an agreement concerning the sale of this property with an agreed purchase price of $420,000.00. The dispute in this case centers around the following paragraphs of the contract:

> "3. *Deposit.* To assure Purchaser's faithful compliance with the provisions of this Agreement, Purchaser has this day deposited the sum of TWENTY THOUSAND DOLLARS ($20,-

000.00), which deposit shall be held by Commonwealth Land Title Company, 1828 L Street, N. W., Washington, D. C. If the Purchaser consummates settlement, the deposit as aforesaid shall be applied to the cash down payment required to be made by Purchaser at the time of settlement. If Purchaser shall refuse or fail to make settlement, although all conditions precedent to settlement have been complied with, said deposit of TWENTY THOUSAND DOLLARS ($20,000.00) shall be retained by the Seller as agreed as liquidated damages, and Purchaser shall have no further rights or liabilities hereunder, and the parties shall be relieved of further liability hereunder.

\* \* \*

10. *Sewer Moratorium.* The parties recognize and agree that there presently exists governmental prohibition of development of the Land in the form of a temporary moratorium in the installation of sanitary sewer facilities to the Land. In the event such sewer moratorium has not terminated on or before the date of settlement, the Purchaser shall have the right to terminate this Contract, in which event their deposit shall be refunded and the parties relieved of further liability hereunder, it being expressly understood and agreed that the Seller shall in no way be obligated for any expenses incurred by the Purchaser in the event of termination.

\* \* \*

12. *Tests, Studies.* The Purchaser shall have the right, for a period of thirty (30) days commencing as of the date hereof, to make such engineering tests, economic studies and/or evaluation of the Land with respect to development. The Purchaser shall have the right, for any reason, including unsatisfactory results of any of the foregoing tests, studies and/or evalua-

tions, at any time during the thirty (30) day period commencing as of the date of execution hereof to cancel and terminate this Contract by sending written notice thereof to the Seller at 8120 Fenton Street, Silver Spring, Maryland, with a copy to Grossberg, Yochelson, Fox & Beyda, 1707 H Street, N. W., Washington, D. C., by certified mail, in which event the parties shall be relieved of further liability and the deposit refunded to the Purchaser."

It is apparent that at the time the contract was executed the parties anticipated that the sewer moratorium would be lifted by February 21, 1971, the latest date authorized for settlement within the 120 day period provided for by the agreement. When the moratorium was not lifted by that date and settlement was not made, Green Manor notified appellees on March 18 in writing that since they had not made timely settlement the contract was terminated and the deposit would be retained in accordance with the terms of the agreement. The purchasers responded by letter on March 23 requesting the immediate return of their deposit in conformity with paragraph 10 of the agreement. When the request was refused, appellees instituted this suit to recover the deposit.

In *Dixon v. Haft,* 253 Md. 692, 253 A. 2d 715 (1969) this Court, relying on *Schlee v. Bryant,* 247 Md. 689, 234 A. 2d 457 (1967) and *Messina v. Moeller,* 214 Md. 110, 133 A. 2d 75 (1957), held that the following language made an agreement concerning the purchase of land an option contract:

"Time is of the essence of this Contract and within ninety days from the date of acceptance hereof by the Seller, or within ninety days after all contingencies have been eliminated or as soon thereafter as a report on the title can be secured if promptly ordered, and an appointment can be made with the Title Company for settle-

ment, the Seller and Purchaser are required and agree to make full settlement in accordance with the terms hereof. *If the Purchaser shall fail to do so, the deposit herein provided shall be forfeited as the sole remedy of the Seller and the Purchaser shall thereby be relieved from further liability hereunder."*

The appellant contends that the terms of the contract in dispute are so similar to those in the *Haft* contract that our decision here is controlled by that case. We are in accord; and, therefore, we hold that the agreement is an option. The terms of the two agreements are indistinguishable—both establish a settlement date; both provide for a deposit to be applied to the principal if the sale is consummated; both specify that in the event the purchaser shall refuse to settle, the deposit will be forfeited to the seller; and most importantly, both give the purchaser the option and privilege to "choose between consummating the purchase on the agreed upon terms or of walking away, for any reason or no reason, with no obligation or liability whatever save the loss of his deposit." *Dixon v. Haft, supra* at 696. Here, purchasers have the additional right to avoid the loss of their deposit by invoking rights contained in paragraphs 10 or 12.

Appellees argue forcefully, but unsuccessfully, that the addition of paragraphs 10 and 12 changes the nature of the *Haft* type agreement into a bilateral contract for sale. However, as we read paragraph 12 it merely gives the purchaser an additional option for 30 days to cancel the agreement by the specified affirmative act of notifying the seller. But, by giving no notice, appellees clearly surrendered this privilege. The language employed in paragraph 10 makes it a bit more troublesome to determine its effect. In fact, some may find the language ambiguous. Appellees argue that this paragraph is a condition precedent to any liability on their part, while Green Manor argues that paragraph 10 is merely one

more option which must be acted upon, if at all, within the prescribed time limits. We need not decide this point for even if we assume that the appellees are correct, and that paragraph 10 is a condition precedent, they are given only a *right* to terminate. They must exercise this right within the time limits of the option contract and by the means specified, if any, or there is a waiver. The paragraph could have been drafted so that the agreement would automatically terminate on the failure of a condition but the parties chose to give the purchasers an election which they had to make within the designated time limits if they wished to gain its advantages.

The only question that remains to be considered is whether the purchasers timely exercised their rights of termination. Unfortunately, the trial judge did not decide this factual issue as it was unnecessary for him to do so when he ruled that the contract was one for sale and not an option. The trial judge did find, and the parties do not dispute, that they met to discuss the status of their agreement in mid-January at which time both sides recognized that the sewer moratorium would continue past settlement date. There is, however, an unresolved conflict in the testimony as to whether the appellees gave notice of termination at that meeting. Unlike paragraph 12, where written notice of termination is required, no method of notice is specifically mandated by the agreement to take advantage of paragraph 10. Therefore, actual receipt of timely notice in any form would suffice. The appellees offered evidence that they had orally exercised their right to terminate the agreement at the January meeting. Mr. Tomares testified as follows:

> "Q. Fine, would you please tell us the purpose of your meeting with Mr. Berk? A. The purpose of our meeting with Mr. Berk was to inform him we could not go to settlement because of the sewer moratorium.
>
> Q. You indicated that was the purpose; did

you, in fact, tell Mr. Berk that you were— A. We did, in fact, tell Mr. Berk we couldn't go to settlement because of the sewer moratorium.

Q. Okay, you say that the date of that meeting was when, approximately? A. Approximately the fifteenth of January.

\* \* \*

Q. What notification, if any, had you given under your right to terminate the contract? A. We orally terminated the contract with Mr. Berk on the seventeenth or fifteenth of January at our meeting; . . . ."

Mr. Berk, who represented Green Manor at the meeting, denied ever engaging in such a conversation or receiving any notification of termination other than the letter of March 23. This contradictory testimony presents a factual dispute that calls for a determination by the trier of fact. Accordingly, we remand the case without affirmance or reversal to the Circuit Court for Montgomery County for further proceedings. The ownership of the $20,000 deposit awaits only the resolution of this factual question.

*Case remanded for further proceedings without affirmance or reversal.*
*Costs to be paid by appellees.*